381 A.2d 1245

**COMMONWEALTH of Pennsylvania**

**v.**

**Kenneth ERNST, Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1976.

Decided Dec. 1, 1977.

Rehearing Denied Feb. 2, 1978.

Sanford A. Krevsky, Public Defender, Thomas C. Zerbe, Harrisburg, for appellant.

Marion E. MacIntyre, 2nd Asst. Dist. Atty., Harrisburg, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER OF THE COURT

PER CURIAM:

The judgment of sentence is affirmed by an equally divided Court.

POMEROY, J., files an Opinion in Support of Affirmance in which EAGEN, C. J., joins. NIX, J., concurs in the result of this Opinion.

ROBERTS, J., files an Opinion in Support of Reversal in which O'BRIEN, J., and MANDERINO, J., join.

JONES, former C. J., did not participate in the decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

POMEROY, Justice.

Appellant Kenneth Ernst was convicted by a jury of murder in the first degree for the shooting death of his 20 year old son. Following the denial of post-trial motions, he

was sentenced to a term of life imprisonment. In this direct appeal[1] Ernst raises several issues, none of which I find meritorious; I would therefore affirm the judgment. Of the several issues tendered in support of a new trial, I deal with only one in this opinion.[2]

At his trial, appellant presented an insanity defense consisting of the testimony of both lay and psychiatric witnesses that, due to a mental disease, Ernst could not determine that his act was wrong. On that issue, the trial judge charged the jury as follows: "The defendant has the burden of proving an insanity defense by a fair preponderance of the evidence". It is now argued that this charge was in error in light of our decisions in *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), and *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974), both of which were announced after trial of this case.[3]

The Commonwealth does not dispute the assertion that the charge of the court was erroneous in light of *Demmitt, supra*. In that case we held that where, as here, there is evidence in the case sufficient to raise the insanity issue, the prosecution then bears the burden of proving a defendant's

1. We have jurisdiction of this appeal by virtue of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

2. The other assignments of error are as follows: (1) Appellant was deprived of a fair trial because one of the jurors assertedly knew appellant and his father; (2) the court erred in admitting into evidence a blood-stained pajama top; (3) appellant was prejudiced by the trial judge's attitude toward defense counsel; (4) the testimony of one of the Commonwealth's psychiatrists was so inconsistent and confusing as to render it nugatory; (5) the evidence was insufficient to permit a verdict of murder in the first degree.

I have reviewed the record pursuant to our statutory obligation, Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964), and conclude that the evidence was sufficient to sustain a verdict of murder in the first degree. I have also considered the other issues raised by appellant and find them without merit.

3. *Rose* and *Demmitt* were both handed down July 1, 1974; trial in this case was held between January 8 and January 11, 1974, and post-verdict motions were argued before a court *en banc* on January 17, 1974.

sanity beyond a reasonable doubt.[4]  See also *Commonwealth v. Delker,* 467 Pa. 305, 356 A.2d 762 (1976); *Commonwealth v. Moyer,* 466 Pa. 464, 353 A.2d 447 (1976).  Instead, it is argued by the Commonwealth (1) that the *Demmitt* decision, having been announced subsequent to the instant trial, should not be applied to this case, and (2) that appellant's failure to object to the charge precludes him from assigning it as error on appeal.  I agree with these positions.

Our decisions in *Demmitt* and *Rose, supra,* were founded upon state evidentiary law.  See *Commonwealth v. Rose,* 457 Pa. at 386, 321 A.2d at 883.  While acknowledging in our opinion in *Rose* that the decision of the Supreme Court of the United States in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), had held that due process requires that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged, we expressed uncertainty as to whether the *Winship* holding was applicable to affirmative defenses, for in an older Supreme Court case, *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), it had been held that due process was *not* violated by a state's placing the burden of proving the defense of insanity upon the defendant.[5]  Subsequent to *Demmitt* and *Rose,* however, the Supreme Court decided *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), a decision which extended *Winship* to invalidate the rule prevailing in the state of Maine which required a defendant charged with murder, if he would reduce the crime to voluntary manslaughter, to prove by a preponderance of the evidence that he acted in the heat of passion on sudden provocation.  On the basis of our reading of *Mullaney* we thereafter expressed the thought that our *Demmitt*

4.  In *Commonwealth v. Rose, supra,* we reached the same result with regard to the defense of intoxication.

5.  A reading of the *Leland* opinion reveals that Oregon's then formulation of the elements of murder, as well as its definition of insanity, substantially parallel Pennsylvania law.  The Oregon statute which was upheld in *Leland* required that the defendant's burden in establishing the insanity defense was to prove that condition beyond a reasonable doubt.

and *Rose* decisions may have possessed a constitutional underpinning. See, e. g., *Commonwealth v. Moyer,* 466 Pa. 464, 353 A.2d 447 (1976); *Commonwealth v. Haywood,* 464 Pa. 226, 346 A.2d 298 (1975); *Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975). Cf. *Commonwealth v. Cropper,* 463 Pa. 529, 535, n.6, 345 A.2d 645 (1975). And as a consequence of the view that the *Demmitt* holding was probably required by the federal constitution, we applied that decision retroactively to cases reaching us on direct appeal which, like the one before us instantly, had been tried prior to the announcement of the *Rose* and *Demmitt* decisions.[6] See *Commonwealth v. Moyer, supra; Commonwealth v. Williams, supra; Commonwealth v. Simms,* 462 Pa. 26, 333 A.2d 477 (1975). The Superior Court did likewise. *Commonwealth v. Dixon,* 235 Pa.Super. 415, 341 A.2d 147 (1975).

With this background in mind, I am now obliged to observe that our original hesitation over grounding the adjudications in the *Rose* and *Demmitt* cases on constitutional requirements has proved to be justified. In its most recent pronouncement on the *Winship* doctrine, the Supreme Court held that "it remain[s] constitutional to burden the defendant with proving his insanity defense," and took occasion to confirm the continuing vitality of its decision in *Leland v. Oregon,* discussed *supra. Patterson v. New York,* 432 U.S. 197, 204, 97 S.Ct. 2319, 2324, 53 L.Ed.2d 281, 289 (1977).[7] See also *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976). In consequence of *Patterson,* we should now adhere to our initial characterization of *Rose* and *Demmitt* as decisions based on state evidentiary law.

**6.** This is not to suggest that all constitutionally-based decisions must necessarily be applied retrospectively. See, e. g., *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977) (opinions in support of affirmance); *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971).

**7.** On the same day that *Patterson* was decided, the Supreme Court ruled that its decision in *Mullaney v. Wilbur, supra,* as interpreted by *Patterson,* is fully retroactive. *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

The almost uniform practice of this Court has been to apply nonconstitutionally premised criminal law decisions in a non-retroactive manner. *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973). Accord, *Commonwealth v. Tarver,* 467 Pa. 401, 357 A.2d 539 (1976) (opinion announcing decision of the Court); *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974) (opinion in support of affirmance); *Commonwealth v. Fowler,* 451 Pa. 505, 304 A.2d 124 (1973); *Commonwealth v. O'Neal,* 441 Pa. 17, 271 A.2d 497 (1970); *Commonwealth v. Scoleri,* 399 Pa. 110, 160 A.2d 215 (1960) (opinion in support of affirmance). See also *Commonwealth v. Jackson,* 230 Pa.Super. 386, 326 A.2d 623 (1974); *Commonwealth v. Williams,* 232 Pa.Super. 339, 331 A.2d 875 (1974). But see *Commonwealth v. Saunders,* 456 Pa. 406, 322 A.2d 102 (1974). Inasmuch, however, as several defendants whose trials took place prior to the announcement of our *Demmitt* and *Rose* decisions have heretofore received the benefit of the decisions in direct appeals from judgments of sentence, see *Moyer* and related cases cited *supra,* I believe that it would be inequitable to reverse course at this juncture and deny to other defendants similarly situated (i. e., those whose judgments are not yet final) the same relief. Thus I believe that good reason exists for according our *Demmitt* and *Rose* decisions a limited measure of retroactivity.

Unfortunately for the present appellant, however, he is not in fact "similarly situated" to the appellants in *Moyer* and the other decisions cited above. In those cases the defendants had preserved the issue for appellate review by raising it at trial.[8] Kenneth Ernst, on the other hand, did not raise any objection to the court's "preponderance charge" at any time in the trial court; the first mention of the problem is in this appeal. Our rules of criminal procedure, reflecting sound jurisprudential considerations, provide that an appellant may not assign as error a portion of a

8. Thus in *Moyer* we stated that the retroactive effect of *Rose* and *Demmitt* was "no longer an open question in cases such as this, *where the issue has been properly preserved at trial.*" 466 Pa. at 468, 353 A.2d at 449. (Emphasis supplied.)

charge to a jury or an omission therefrom unless specific objection is made before the jury retires to deliberate.[9] Pa.R.Crim.P. 1119(b). See, e. g., *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). This is reflective of the elementary principle that an appellate court does not review issues raised for the first time on appeal. See, e. g., *Commonwealth v. Daniels,* 467 Pa. 35, 354 A.2d 538 (1976); *Commonwealth v. Blount,* 466 Pa. 370, 353 A.2d 400 (1976); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972). In recent years this proposition has been fortified and emphasized by the elimination of the exception for "basic and fundamental error." *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

It is true that the reasons supporting a limitation of appellate review to points which have been properly preserved below are absent when the unasserted proposition is not in being at the time of trial. See *Commonwealth v. Cheeks,* 429 Pa. 89, 239 A.2d 793 (1968). See also *Commonwealth v. Richardson,* 433 Pa. 195, 249 A.2d 307 (1969); *Commonwealth v. Simon,* 446 Pa. 215, 285 A.2d 861 (1971). Cf. *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966). *Cheeks,* however, was a case involving a constitutional claim, where different considerations are necessarily involved. Although in such a case a defendant will not be precluded from raising on appeal a legal principle newly announced in an appellate decision rendered subsequent to the date of trial, I do not believe that this exception should be extended to non-constitutional claims. A similar situation was before us in *Commonwealth v. Cropper, supra,* a pre-*Rose/Demmitt* case in which defendant's counsel admitted during closing argument that his client bore the burden of proving self-defense by a preponderance of the evidence, and did not object to that standard either at trial or in post-trial motions. Although this was, of course, not consistent with *Rose* and

---

**9.** An objection is not necessary if the matter has already been covered by a point for charge which has been denied by the trial judge before his charge to the jury has been concluded. *Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975); *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428 (1969).

*Demmitt,* we held that the issue was waived on appeal because Cropper's counsel had not objected at the trial level to the evidentiary burden his client bore. 463 Pa. at 536, 345 A.2d at 648. I believe that *Cropper* cannot be validly distinguished and that it controls this case.

For these reasons, the judgment of sentence should be affirmed.

EAGEN, C. J., joins in this Opinion.

NIX, J., concurs in the view that the judgment should be affirmed.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

The opinion in support of affirmance states that although this Court should apply the rules established in *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974) and *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974) to cases on direct appeal, it should do so only where the defendant objected at trial to the court's charge on the burden of proving insanity. It reaches this conclusion by adopting the following positions:

(1) Unless involving an issue of constitutional law, a decision of criminal law does not apply to cases on direct appeal;

(2) *Demmitt* and *Rose* are not constitutionally based, and therefore should not apply to cases on direct appeal. An exception to this rule will be made, however, because this Court previously believed that *Demmitt* and *Rose* might be constitutionally required and applied those decisions to cases on direct appeal; and

(3) Appellant is not entitled to this benefit, however, because he failed to object to the court's charge on the burden of persuasion.

In short, the opinion in support of affirmance states that appellant waived his right to attack the erroneous instruction although at the time of his trial there existed no right

to another instruction. Because our cases support neither the majority's reasoning nor its result, I dissent.

## I

This Court has adopted the principle that "a court is to apply the law in effect at the time it renders its decision." *Commonwealth v. Saunders*, 456 Pa. 406, 409 n.5, 322 A.2d 102, 103 n.5 (1974); accord, *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Ziffrin, Inc. v. United States*, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *United States v. Chambers*, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934); *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). In *Schooner Peggy*, Chief Justice Marshall announced for the Supreme Court:

"But if, subsequent to the judgment, and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied . . . . In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."

5 U.S. (1 Cranch) at 110.

Relying on *Schooner Peggy* and cases following *Schooner Peggy*, Mr. Justice Rehnquist wrote for the Supreme Court in *Hamling v. United States*:

"Our prior decisions establish a general rule that a change in the law occurring after a relevant event in a case will be given effect while the case is on direct review."

418 U.S. at 102, 94 S.Ct. at 2899–900. In *Bradley v. School Board of Richmond*, supra, Mr. Justice Blackmun, writing for a unanimous Court, affirmed the long established princi-

ple that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016; accord, *Cort v. Ash*, supra. Further, the Supreme Court stated that this rule and the reasoning behind it have "been applied where the change was constitutional, statutory, . . . judicial," or administrative. Id. at 715, 94 S.Ct. at 2018; accord, *Thorpe v. Housing Authority*, supra; *Commonwealth v. Mayberry*, 459 Pa. 91, 100–01 n.13, 327 A.2d 86, 91 n.13 (1974) (plurality opinion) (dictum).

As I stated in my Opinion in Support of Reversal in *Commonwealth v. Cain*, 471 Pa. 140, 369 A.2d 1234 (1977) (opinion of Roberts, J., joined by O'Brien and Manderino, JJ.), failure to apply an existing rule of law to cases on direct appeal is inconsistent with the proper functioning of the judicial process. 471 Pa. at 188, 369 A.2d at 1259. In addition, applying a change in law to cases on direct appeal ensures that individuals similarly situated are accorded the same treatment. Id. at 194–95, 369 A.2d at 1262–63. Accord, *Hankerson v. North Carolina*, 432 U.S. 233, 246, 97 S.Ct. 2339, 2347, 53 L.Ed.2d 306 (1977) (concurring opinion of Powell, J.). These considerations are equally valid whether the decision is constitutional or non-constitutional. As Mr. Justice Powell has recognized "this approach is closer to the ideal of principled, evenhanded judicial review." Id. at 248, 97 S.Ct. at 2348;[1] accord, Id. at 245, 97 S.Ct. at 2346 (concurring opinion of Marshall, J.); *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (concurring opinion of Harlan, J.); see *Bradley v. School Board of Richmond*, supra; *Thorpe v. Housing Authority*, supra; *United States v. Schooner Peggy*, supra.

1. Mr. Justice Powell stated: "The retroactivity doctrine that has emerged is far from satisfactory. Although on several occasions I have joined in its application, I am now persuaded that it would be wiser to adopt the view urged by Mr. Justice Harlan [that a new rule of law should be applied to all cases pending on direct review]." 432 U.S. at 246, 97 S.Ct. at 2347. See *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160 (1971) (concurring opinion of Harlan, J.).

Accordingly, this Court applied newly announced principles to criminal cases on direct appeal where the issues involved were not constitutional in both *Commonwealth v. Saunders*, supra ("interests analysis" test applied as a matter of state law when a state prosecution follows a conviction by a different sovereign for the same offense) and *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970) (vicarious liability of felon under felony murder doctrine). In *Smith*, Mr. Justice O'Brien, writing for the Court, stated: "No one would suggest that this Court would be violating any settled principles of law by making a change in the law and reversing a conviction, even though the law at the time of conviction supported the conviction." Id. at 236, 261 A.2d at 559. These decisions rest upon the principle that it is unjust to require an appellant whose case is not yet final to endure the burden of a rule now recognized as offensive to our jurisprudence.[2]

II

Asserting that the United States Constitution does not require the results reached in *Demmitt* and *Rose*, the opinion

2. The cases cited by the opinion in support of affirmance to support the proposition that this Court applies decisions involving non-constitutional issues of law only prospectively either do not represent the opinion of the Court, *Commonwealth v. Tarver*, 467 Pa. 401, 357 A.2d 539 (1976) (opinion announcing decision of the Court); *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974) (opinion in support of affirmance); *Commonwealth v. Fowler*, 451 Pa. 505, 304 A.2d 124 (1973) (plurality opinion); *Commonwealth v. Scoleri*, 399 Pa. 110, 160 A.2d 215 (1960) (opinion in support of affirmance), or involve procedural issues rather than, as here, substantive law, *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976) (search warrant procedure); *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973) (same); *Commonwealth v. O'Neal*, 441 Pa. 17, 271 A.2d 497 (1970) (burden of going forward at trial). It is well settled that procedural rights are determined according to the law in force at the time of trial. See *Sussman v. Yaffee*, 443 Pa. 12, 275 A.2d 364 (1971); *Schladensky v. Ellis*, 442 Pa. 471, 275 A.2d 663 (1971); *Wenzel v. Morris Distributing Co., Inc.*, 439 Pa. 364, 266 A.2d 662 (1970); see generally, *Mullaney v. Wilbur*, 421 U.S. 684, 702 n.31, 95 S.Ct. 1881, 1891 n.31, 44 L.Ed.2d 508 (1975) (unlike burden of persuasion, burden of going forward is procedural and may be placed on defendant); *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974).

in support of affirmance concludes that these decisions are based solely on state evidentiary law. I cannot agree.

The opinion in support of affirmance ignores the Pennsylvania Constitution as authority for the decisions in *Demmitt* and *Rose*. In *Commonwealth v. Rose*, supra at 394, 321 A.2d at 887 (concurring opinion), this writer, joined by Mr. Justice Manderino, stated that the Pennsylvania Constitution, Pa. Const. art. I, § 9, requires that, once a defense is at issue, the Commonwealth has the burden of disproving that defense beyond a reasonable doubt. In a separate concurring opinion, Mr. Justice Nix also based his decision on the state constitution. *Commonwealth v. Rose*, supra at 395, 321 A.2d at 887 (concurring opinion). As Mr. Justice Nix stated:

"Nothing is more basic to the adjudicatory process than the standard to be employed by the finder of fact in the determination of guilt or innocence."

Id. at 397, 321 A.2d at 888.

I continue to adhere to the view that due process, as protected by the Pennsylvania Constitution, requires the Commonwealth to prove guilt beyond a reasonable doubt when defenses such as intoxication and insanity are raised, and that this requirement prohibits shifting the burden to the defendant to prove these defenses. This Court has an independent duty to interpret the Pennsylvania Constitution, and should not feel limited by the Supreme Court's interpretation of a similar section of the federal Constitution when we believe a different interpretation of the state constitution is correct. In *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975), the California Supreme Court declared

"state courts are the ultimate arbiters of state law, even textually parallel provisions of state constitutions . . [T]he California Constitution is, and always has been, a document of independent force. Any other result would contradict not only the most fundamental principles of federalism but also the historic bases of state charters. It is a fiction too long accepted that provisions in state constitutions textually identical to the Bill of Rights were

intended to mirror their federal counterpart. The lesson of history is otherwise . . . ."

Id. at 548–49, 119 Cal.Rptr. at 328, 329, 531 P.2d at 1112–13. The California Court cited *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974), where the Supreme Court of Hawaii gave independent force to the search and seizure provision of the state constitution:

" . . . as the ultimate judicial tribunal in this state, this court has final, unreviewable authority to interpret and enforce the Hawaii Constitution. We have not hesitated in the past to extend the protections of the Hawaii Bill of Rights beyond those of textually parallel provisions of the Federal Bill of Rights when logic and a sound regard for the purposes of those protections have so warranted."

55 Haw. at 369, 520 P.2d at 58.

This Court has often accorded provisions of the Pennsylvania Constitution an interpretation varying from that of analogous sections of the federal Constitution. E. g., *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975) (forbidding impeachment by means of unconstitutionally obtained confession). Our independent obligation to interpret the state constitution is especially important when the Supreme Court's decisions, like *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) are based in part on deference to the states' administration of their own systems of criminal justice.[3]

---

**3.** The Supreme Court stated:

"It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine v. California,* 347 U.S. 128, 134, 74 S.Ct. 381, 384, 98 L.Ed. 561 (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is 'normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as

Moreover, I believe that *Demmitt* and *Rose* were required by the United States Constitution. In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, the Court, reaffirming *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which held that due process requires the prosecution to prove beyond a reasonable doubt every element and each fact necessary to the crime charged, struck down a statutory scheme in which the state placed upon the defendant the burden of proving heat of passion by a preponderance of the evidence to reduce homicide to manslaughter. *Patterson v. New York*, supra, held once more that the state cannot shift to the defendant the burden of proof as to any element or fact of the crime charged. The statute in *Patterson* survived this prohibition because New York required the prosecution to prove each element. Once the prosecution satisfied its burden, the State could place upon the defendant the burden of demonstrating mitigating circumstances, so long as those circumstances did not negate any element or fact of the crime. Id. at 206–207, 97 S.Ct. at 2325. Thus, if a defense, such as intoxication, serves to negate an element the Commonwealth is required to prove, such as specific intent, the federal Constitution requires the prosecution to prove beyond a reasonable doubt that the defense has not been established. See *Commonwealth v. Rose*, 457 Pa. at 395, 321 A.2d at 887 (1974) (concurring opinion of Nix, J.). I believe that insanity negates intent, an element of the crime of murder. *Commonwealth v. Vogel*, 440 Pa. 1, 268 A.2d 89 (1970) (opinion in support of reversal); see *Davis v. United States*, 160 U.S. 469, 488, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895) and cases cited in 17 A.L.R.3d 158–59 (1968).

## III

Despite the view of the opinion in support of affirmance that *Demmitt* and *Rose* are not constitutionally required and

fundamental.' *Speiser v. Randall*, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958)."
432 U.S. at 201, 97 S.Ct. at 2322, 53 L.Ed.2d 281. See generally, Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489 (1977).

116

should be given prospective application only, the opinion in support of affirmance would apply *Demmitt* here but for appellant's failure to object to the court's charge, because previous appellants have received the benefit of these decisions on direct appeal. Denying appellant the benefit of *Demmitt* because he failed to object to the court's charge violates precedent, distorts our rules of waiver and is manifestly unfair.

This Court has never required that an accused object at trial to an instruction fairly reciting the prevailing law in order to be accorded on direct appeal the benefit of a newly announced rule. In *Commonwealth v. Cheeks*, 429 Pa. 89, 95, 239 A.2d 793, 796 (1968), we stated that

"It would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived."

At the time of appellant's trial, the decisions of this Court had not yet recognized the right of the defendant to have the Commonwealth prove beyond a reasonable doubt that appellant was sane at the time of the crime. Therefore, appellant cannot be found to have waived this issue for failure to object to the jury instruction placing the burden of proving an insanity defense on appellant.

The opinion in support of affirmance would distinguish *Cheeks* because it involved a constitutional claim. In my view, see Part II, infra, the Commonwealth is constitutionally required to prove criminal capacity beyond a reasonable doubt when the accused interposes the defense of insanity or intoxication. Accordingly, I find this purported distinction inapposite. Even assuming that the rule of *Demmitt* and *Rose* is not constitutionally required, there is no precedent for the position of the opinion in support of affirmance. *Cheeks* did not limit its application to cases of constitutional magnitude and its rationale in no way rests upon such a distinction. In *Commonwealth v. Simon*, 446 Pa. 215, 285 A.2d 861 (1971), we described *Cheeks, Commonwealth v. Richardson*, 433 Pa. 195, 249 A.2d 307 (1969), and *Common-*

*wealth v. Jefferson,* 423 Pa. 541, 226 A.2d 765 (1967), as establishing the rule that

"failure to raise an issue in a prior proceeding is not a waiver when the *legal principles* upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding."

446 Pa. at 218, 285 A.2d at 862 (emphasis in original). The prejudice to an accused subjected to a rule subsequently held invalid is no less when the newly announced legal principle finds its source in non-constitutional rather than constitutional law. "It is the impact upon the defendant's trial which should primarily concern the courts, not whether the error can be labeled constitutional or non-constitutional." Saltzburg, The Harm of Harmless Error, 59 Va.L.Rev. 988, 1025 (1973); see R. Traynor, The Riddle of Harmless Error 47–49 (1970); *Fahy v. Connecticut,* 375 U.S. 85, 94, 84 S.Ct. 229, 234, 11 L.Ed.2d 171 (1963) (dissenting opinion of Harlan, J., joined by Clark, Stewart and White, JJ.). Certainly, an accused cannot be charged with greater knowledge of an unannounced principle simply because it is one of less than constitutional dimensions. Appellant did not waive his claim and deserves the benefit of *Demmitt.*

In *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966), this Court granted the appellants a new trial so they could receive the benefit of a newly announced non-constitutional rule of law, even though the appellants had not objected to the old rule in the original trial. The Court concluded that:

"[A contrary rule] would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that, before his case is finally concluded, one such theory might become the law. Since, by hypothesis, the trial court would have to overrule any objection based on his failure to adopt one of these theories, on appeal, the winning party below would be in the same position as the instant appellee. Indeed this requirement would tend to delay justice, for the court below would still have to consider and rule on each theory. Therefore, we are unwilling to conclude that the appellants' failure to inter-

ject the rationale of [the newly announced decision] into the trial constitutes a waiver and precludes them from now seeking the benefit of that decision."

Id. at 626, 222 A.2d at 901 (footnote omitted); cf. *Linda Coal & Supply Co. v. Tasa Coal Co.,* 416 Pa. 97, 204 A.2d 451 (1964) (no waiver when party cannot be charged with knowledge of right).[4] Surely, the rationale of *McCrory* carries no less force in criminal proceedings.

The only justification offered by the opinion in support of affirmance for the distinction it draws is that constitutional claims "necessarily" involve "different considerations." No such distinction, however, was recognized in *McCrory*. Moreover, the rationale of *Cheeks* is that it is unfair to rely upon an invalid rule in a case on direct appeal, and manifestly unfair to find a waiver in the failure to object to what was valid law at the time of trial. These principles apply equally to changes in non-constitutional and constitutional law.

The opinion in support of affirmance fails to explicate the "different considerations" upon which it relies. *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975) described by the opinion in support of affirmance as "controlling," is inapposite. In *Cropper,* the defendant failed to object to the burden of proving the defense of self-defense imposed upon him in his trial for voluntary manslaughter. After his conviction, this Court decided *Rose,* which held that the burden of proving that intoxication negated specific intent could not be shifted to the defendant. Cropper then contended on appeal that *Rose* should be extended to the affirmative defense he had raised. We held that the failure to object constituted a waiver. *Cropper,* following standard waiver principles, held only that an appellant seeking to raise an issue of first impression at the appellate level waives the issue if he failed to enter timely objections. In

4. *McCrory* found that by this result, Pennsylvania joined the majority of jurisdictions which had considered whether appellate courts should apply a change in law to all pending cases. *Kuchinic v. McCrory,* 422 Pa. 620, 625 n.5, 222 A.2d 897, 900 n.5 (1966) (citing cases).

contrast, appellant is not attempting to induce this Court to make new law. Unlike Cropper, who sought to extend existing law, appellant requests only that we apply to him the same rule made available to others since *Demmitt.*

I would reverse appellant's conviction and grant a new trial.

O'BRIEN and MANDERINO, JJ., join this opinion.