511 A.2d 171

**COMMONWEALTH of Pennsylvania**

**v.**

**Clyde Eugene HILL, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 16, 1986.

Filed June 4, 1986.

Petition for Allowance of Appeal Denied Dec. 18, 1986.

Clyde E. Hill, in propria persona.

Katherene Holtzinger-Conner, Deputy District Attorney, Harrisburg, for Com., appellee.

Before WICKERSHAM, DEL SOLE and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the court below which dismissed without a hearing the Post Conviction Hearing Act petition which had been filed by appellant, Clyde Hill. We affirm.

The complicated procedural history of this case reveals the following:

On October 18, 1973, appellant was convicted of two (2) counts of murder of second degree by a jury under the old Crimes Code.[1] Appellant received consecutive terms of life imprisonment. No post-verdict motions were filed. A direct appeal to the Supreme Court followed, and the judgments of sentence were affirmed. *Commonwealth v. Hill*, 453 Pa. 349, 310 A.2d 88 (1973). (*Hill I*).

On May 9, 1977, appellant filed a *pro se* PCHA petition and appellant was granted the opportunity to file post-verdict motions nunc pro tunc. These motions were denied by the court en banc and appellant launched another direct appeal to the Supreme Court. *Commonwealth v. Hill*, 492 Pa. 100, 422 A.2d 491 (1980). The Supreme Court transferred the matter to a special Superior Court panel which affirmed the judgment of sentence. *Commonwealth v. Hill*, 273 Pa.Super. 118, 416 A.2d 1117 (1979). Appellant's petition for allowance of appeal was granted, and our Supreme Court affirmed the judgment of sentence by an equally divided Court. *Commonwealth v. Hill*, 492 Pa.

1. Act of June 24, 1939, P.L. 872, as amended, 18 P.S. § 4701, *et seq.* Murder of the second degree in this case would now be designated as murder of the third degree. See 18 Pa.C.S.A. § 2502(c). The trial judge in this case was the Honorable Richard B. Wickersham, who is now a member of this Court.

100, 422 A.2d 491 (1980) (Opinion in Support of Reversal by Roberts, J., joined by O'Brien and Flaherty, JJ.) (*Hill II*).

In March of 1982, appellant instituted habeas corpus proceedings in the federal district court, which denied appellant relief. *Hill v. Zimmerman*, 542 F.Supp. 700 (M.D.Pa. 1982). On appeal, the United States Court of Appeals for the Third Circuit vacated the order of the federal district court in order that appellant might pursue his claim in the state court system. *Hill v. Zimmerman*, 709 F.2d 232 (3rd Cir.1983), cert. denied, 464 U.S. 940, 104 S.Ct. 354, 78 L.Ed.2d 318 (1983).

On June 22, 1983, appellant filed a petition for reconsideration *nunc pro tunc* with our Supreme Court in order to have counsel appointed or for further post conviction relief. On August 22, 1983, our Supreme Court granted appellant's petition for the appointment of counsel and referred the matter "to the Court of Common Pleas of Dauphin County for the Appointment of Counsel and expedited PCHA proceedings." "ORDER OF COURT" Record # 19. Counsel was appointed, and a supplemental PCHA petition was filed and denied without a hearing.

Appellant then filed another *pro se* petition with the Supreme Court for writ of habeas corpus or for supervisory certification of appeal which was transferred to our Court for disposition. On November 1, 1984, we directed that the appeal should be considered as if timely filed. This Court dismissed the appeal on March 26, 1985, due to a failure to file briefs. On July 22, 1985, we granted appellant's petition for reconsideration and directed the appellant to petition for the appointment of counsel or to file a brief *pro se.* Counsel was appointed, and, as a result, the matter is ripe for reconsideration.

Appellant raises the following issues: (1) whether trial counsel was ineffective for failing to object to the trial court's instruction that appellant had the burden of proving insanity and for failing to object to the court's instruction on malice; (2) whether appellant was deprived of his right to due process because the trial court instructed the jury

that appellant had the burden to prove the elements of the murder charge; (3) whether trial counsel was ineffective for failing to object to the psychiatrist's comment which was elicited by the prosecution regarding the possibility that appellant could commit a crime again; (4) whether trial counsel was ineffective for soliciting testimony regarding the non crimen falsi prior convictions of the appellant; and (5) whether prior PCHA counsel was ineffective for failing to allege due process violations which were inherent in the trial court's instruction to the jury regarding the presumption of malice.

Under the applicable Post Conviction Hearing Act[2] which was in effect at the time of appellant's petition, the following was provided:

§ 1180–3. Eligibility for relief

To be eligible for relief under this act, a person must initiate a proceeding by filing a petition under section 5 (§ 1180–5) and must prove the following:

(d) That the error resulting in his conviction and sentence has not been finally litigated or waived.

§ 1180–4. When an issue is finally litigated or waived

(a) For the purpose of this act, an issue is finally litigated if:

(1) It has been raised in the trial court, the trial court has ruled on the merits of the issue, and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling; or

(2) The Superior Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to avail himself of further appeals.

(3) The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue.

**2.** Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. §§ 1180–1 *et seq; repealed,* Act of April 28, 1978, P.L. 202, No. 53 § 2(a) [1397]. The current Post Conviction Hearing Act is found at 42 Pa.C.S.A. §§ 9541 *et seq.* We note, however, that the result is the same under either Act.

(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Additionally, an issue is waived if

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

19 P.S. § 1180–4.

In this case, the issues were not addressed at the Supreme Court level in *Hill II* because that Court found that trial counsel's failure to object timely to the insanity charge rendered the issue waived. However, the merits of the insanity issue were addressed at the Superior Court level. In appellant's previous appeal to this Court, we stated:

During the trial of appellant, Clyde Eugene Hill, in 1973, the jury was charged, without objection by the defense, that appellant had the burden of proving the defense of insanity by a preponderance of the evidence. Subsequent to appellant's conviction the Supreme Court of Pennsylvania held that it is error to place such a burden on a defendant. *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974). Appellant in this appeal from the judgment of sentence contends, as he did in nunc pro tunc post-verdict motions, that his judgment of sentence should be reversed and a new trial granted because the burden of proving insanity was placed upon him.

The issue before us is whether appellant is entitled to have the law of *Demmitt, supra,* applied to his case. This specific issue was before the Supreme Court of Pennsylvania in *Commonwealth v. Ernst,* 476 Pa. 102, 381 A.2d 1245 (1977). Six justices of the Supreme Court considered the *Ernst* appeal. The six justices agreed,

although for different reasons, that an appellant is entitled to the benefit of the *Demmitt* decision if during trial an objection was entered to the charge placing the burden of proving insanity on the accused.

The six justices, however, did not agree as to whether the benefit of *Demmitt* was to be accorded to an appellant at whose trial no objection was entered to the charge placing the burden on the accused. Three justices, Justices O'Brien, Roberts and Manderino, joined in an opinion by Justice Roberts which expressed the view that all convictions, whether or not prior to *Demmitt*, must be reversed if the burden of proving insanity was placed on the accused. Chief Justice Eagen and Justice Pomeroy joined in an opinion by Justice Pomeroy expressing the view that in cases prior to *Demmitt* relief should be given only if the defense had objected to the burden of proof charge when given during an accused's trial. Justice Nix, the sixth justice sitting in the *Ernst* appeal, joined in the result which denied relief to appellant Ernst.

Although a majority of the seven members of the Supreme Court have not as yet expressed a view on whether a conviction should be reversed when the burden of proof as to insanity is erroneously placed without objection, on the accused, the appellant in *Ernst*, similarly situated to appellant before us, we denied relief. Accordingly, we likewise deny relief to the present appellant. In doing so, however, we urge that the Supreme Court again consider the issue raised in *Ernst* by granting a petition for allowance of appeal in this case, should one be filed, so that a controlling decision may be reached in the matter. *See also Commonwealth v. Colbert*, 476 Pa. 531, 383 A.2d 490 (1978); *Commonwealth v. Lynch*, 477 Pa. 390, 383 A.2d 1263 (1978); *Commonwealth v. Rose*, 57 Pa. 380, 21 A.2d 880 (1974).[3]

■ Because the Superior Court addressed the merits of the insanity issue and because that decision has not been

---

**3.** This special panel consisted of Manderino, Watkins, and Cirillo, JJ. Justice Manderino filed a separate concurring opinion.

disturbed by our Supreme Court, the insanity issue has been finally litigated. *See Commonwealth v. Thomas*, 335 Pa.Super. 323, 327, 484 A.2d 155, 157 (1984) ("Since these issues were fully considered on direct appeal, they were fully litigated and not open to collateral attack.")

Appellant also argues that trial counsel was ineffective for failing to object to the trial court's instruction on malice. Normally, this issue would have been waived because of appellant's failure to raise the issue previously. 19 P.S. § 1180–4(c) ("There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.")

However, the record establishes that appellant had been represented by the Public Defender's Office of Dauphin County at trial and during his first direct appeal to the Supreme Court, which was in 1973. Additionally, the court appointed private counsel to assist appellant in framing the issues which were not presented in his first post conviction petition. However, because the Public Defender's Office assisted appellant's first private counsel in prosecuting the petition and because appellant objected to this arrangement, the court allowed appellant the opportunity to file post-trial motions *nunc pro tunc*. The court also appointed second private counsel in order to assist appellant. Appellant's second private counsel represented appellant from January, 1978 up to and including his second direct appeal to the Supreme Court (*Hill II*), which occurred in 1979.

■ Appellant argues that extraordinary circumstances exist which justify his failure to raise the issue of trial counsel's ineffectiveness previously. According to appellant, prior PCHA counsel's ineffectiveness constitutes extraordinary circumstances "[s]ince present counsel was appointed after the denial by the lower court of the petitioner's Post Conviction Hearing Act petition, the present appeal is the earliest stage in the proceedings at which counsel who[se] ineffectiveness is being challenged no longer represent[ed] the Appellant." Brief for Appellant at 30. Because the record does indicate that this is the first stage

40

in the proceedings in which prior PCHA counsel, appellant's second private counsel, no longer represented the appellant, the issue is preserved. *Commonwealth v. Seachrist*, 478 Pa. 621, 387 A.2d 661 (1978).

In analyzing the merits of the malice issue, we must examine the following which was given by the trial court:

"There is a fundamental principle of our system of criminal law and that is that the Defendant is presumed innocent. The mere fact that he was arrested and is accused of a crime is not any evidence against him. Furthermore, the Defendant is presumed innocent throughout the trial unless and until you conclude based on a careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt.

*"It is not the Defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the Defendant is guilty of that crime beyond a reasonable doubt. Indeed, the person accused of a crime is not required to present evidence or prove anything in his own defense except in this particular trial where the Defendant raises a defense of insanity, and in that situation the burden rests on the Defendant to prove to your satisfaction that defense.* I will come to that in a few minutes.

"Although the Commonwealth has the burden of proving that the Defendant is guilty, that does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime. A reasonable doubt must be a real doubt. It may not be an imagined one, nor may it be a doubt manufactured to avoid carrying out an unpleasant duty.

"So, to summarize, you may not find the Defendant guilty in this or any other case based on a mere suspicion of

guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, then the Defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find him not guilty.

"Ladies and Gentlemen, in a homicide case the Commonwealth has the burden of proving beyond a reasonable doubt (1) that a death has occurred, (2) that the death resulted from a criminal agency, and (3) that the Defendant is legally responsible for the death. The burden is upon the Commonwealth to prove the Defendant guilty beyond a reasonable doubt, as I have told you.

"The Defendant in this case, as you know, is charged with the crime of murder and I have just read to you the Statute relating to the charge of murder. You will note that the Statute does not define the word 'murder'. It just tells you what murder is, first degree and second degree.

"Since it is your important duty to determine first the guilt or innocence of the Defendant on the charge contained in the indictments it becomes the Court's duty to explain to you the law applicable to murder. Murder is described to be when a person of sound memory and discretion unlawfully kills any reasonable creature in being under the peace of the Commonwealth with malice aforethought express or implied. The distinguishing criterion of murder is malice aforethought, but it is not malice in the ordinary understanding alone. Ordinarily, you think of malice as a particular spite, a grudge, or a particular ill will. Malice is a legal term and implies much more. It comprehends not only a particular ill will, but every case where there is a wickedness of disposition, hardness of heart, cruelty, recklessness or consequences and a mind regardless of social duty, although a particular person may not be intended to be injured.

"Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed 'malice' in its legal sense prevailed.

"Sometime ago, as I pointed out, the Legislature of Pennsylvania considered that there was a manifest difference in the degree of guilt where a deliberate intention to kill existed on the one hand and where no deliberate intention to kill appeared on the other hand. So the Legislature divided murder into two degrees—murder in the first degree and murder in the second degree.

"I have read to you that the Act of 1939, the Criminal Code, defines a willful, deliberate and premeditated killing to be murder in the first degree.

"In this case before you can find the Defendant guilty of murder in the first degree it will be necessary for you to find that the murder was perpetrated by the Defendant by a willful, deliberate and premeditated killing. So, naturally, I must define that for you. What does the law mean when it says 'willful, deliberate and premeditated?'

"Under the provisions of the law it has been held that the intention to kill is the essence of the offense. Therefore, if an intent to kill exists, it is willful. If the intention is accompanied by such other circumstances as evidence a mind fully conscious of its own purpose and design to kill and to select the instrument or to frame the plan to carry this design into execution, it is premeditated.

"The law fixes no length of time as necessary to form the intention to kill, but leaves the existence of a fully formed intent as a fact to be determined by the jury from all the facts and circumstances of the case.

"The Supreme Court has said this, and I quote: "It is true that such is the swiftness of human thought that no time is so short in which a wicked man may not form a design to kill and frame the means of executing his purpose. Yet this suddenness is opposed to premeditation and a jury must be well convinced upon the evidence that there was time to deliberate and premeditate. The law regards, and the jury must find, the actual intent, that is to say, the fully formed purpose to kill with so much time for deliberation and premeditation so as to convince them that their

purpose is not the immediate offspring of rashness or impetuous temper, and the mind has become fully conscious of its own design."

"So, Ladies and Gentlemen, if there be time to frame in the mind fully and consciously the intention to kill and to select the weapon or means of death and to think and know beforehand, though the time be short, the use to be made of it, there is time to deliberate and premeditate.

"As I pointed out before, the proof of the intention to kill and the disposition of mind to constitute murder in the first degree, the proof of that lies on the Commonwealth, but that proof need not be expressed or positive. It can be inferred from all the facts and circumstances of the case. If from all the facts attending the killing the jury can fully and reasonably and satisfactorily infer the existence of the intention to kill and the malice of heart with which it was done, they will be warranted in so doing.

*"In this connection on the charge of first degree murder and the intention to kill, I must charge you that under the Law of Pennsylvania he who uses upon the body of another at some vital part with a manifest intention to use it upon him a deadly weapon such as an ax, a gun, a knife, or a pistol, must in the absence of qualifying facts be presumed to know that his blow is likely to kill, and knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act. He who uses a deadly weapon without a sufficient cause of provocation must be presumed to do it wickedly or from a bad heart.*

"Ladies and Gentlemen, it necessarily follows from what we have said that all murder which is not of the first degree is necessarily murder of the second degree. That includes all unlawful killings under circumstances of depravity of heart and disposition of mind regardless of social duty, but where no intention to kill exists or can be reasonably and fully inferred. Therefore, in all cases of murder, if no intention to kill can be inferred or collected from the evi-

dence and circumstances, the verdict must be murder in the second degree.

"Ladies and Gentlemen, the Defendant has suggested and mentioned to you the subject of voluntary manslaughter. What is voluntary manslaughter? That is defined to be the unlawful killing of another without malice express or implied. Voluntary manslaughter often so nearly approaches murder it is necessary to clearly differentiate. The difference is this: Manslaughter is never attended by legal malice or depravity of heart, that condition or frame of mind before spoken or exhibiting wickedness of disposition, recklessness of consequences and cruelty. Therefore, to reduce an intentional blow, stroke or wounding resulting in death to voluntary manslaughter there must be sufficient cause of provocation and a state of rage or passion without time to cool placing the Defendant beyond the control of his reason and suddenly impelling him to the deed.

"If any of these be lacking, that is, if there be provocation without passion or passion without provocation, or if there is time to cool and reason, or if there is time to cool and reason has resumed its way, the killing will be murder. Our Pennsylvania Supreme Court in a recent decision has said this: 'The unlawful killing to be voluntary manslaughter must take place in the heat of passion before the blood has had time to cool off, and that passion must be produced by a legally sufficient provocation.' By 'passion' of course we mean anger, fear, rage or terror.

"The Supreme Court has said that in order for a killing to be reduced from murder to voluntary manslaughter the evidence must establish that the killing was perpetrated in the heat of passion, yet that passion must be the result of provocation that would incite a reasonable man into such a frenzied condition. The provocation, in short, must be legally adequate.

"Our highest Court has said that no words nor meer gestures however false, foul or insulting will free a party killing from the guilt of murder, nor will slight or trivial injuries although they amount to an assault, or in some

cases even a blow. In other words, Ladies and Gentlemen, insulting or scandalous words are not sufficient cause of provocation nor are actual indignities to the person of a light and trivial kind. You will keep that in mind when you consider the evidence in this case.

"The Defendant has asserted the defense of insanity. Insanity which exists at the time of an alleged crime is a complete defense to the crime. The Defendant has the burden of proving an insanity defense by a fair preponderance of the evidence. By a preponderance of the evidence we mean that if you take all the evidence on this particular issue and balance it out, if it tips ever so slightly in favor of the Defendant, he has sustained the preponderance of the evidence.

"The term 'insanity' has a special meaning in the Criminal Law. Abnormal conditions which medical science might regard as mental illness do not necessarily amount to what the law regards as insanity. The legal test or definition of insanity is this: 'A person is insane if at the time of committing an act he is as the result of mental disease unable to understand the nature and quality of his act or to distinguish between right and wrong with respect to that act.' Stated more simply, a person is insane if at the time of committing an act and as a result of mental disease he was either incapable of knowing what he was doing, or if he did know what he was doing, [sic] was incapable of judging that it was wrong to do so. The term 'mental disease' in this test means a disease or infirmity of the mind as distinguished for example from a mere deficiency of character, temper or social adjustment. The critical time when insanity must exist in order to be a defense is at the time when the alleged criminal act was committed."
(N.T. at 269–275) (Emphasis added).

According to appellant, the trial court's instruction was unconstitutional under federal law because the prosecution was not required to prove malice in order to establish appellant's murder conviction beyond a reasonable doubt. Instead, appellant argues, "[b]y its very words, it made

proof of use of a gun conclusive proof of the distinct element of malice aforethought without independent satisfaction of the Commonwealth's burden on the issue." Brief for Appellant at 18.

At the time of appellant's trial, the instruction which was given represented a correct statement of law in Pennsylvania. *Commonwealth v. O'Neal,* 441 Pa. 17, 271 A.2d 497 (1970); *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970).

Even appellant concedes as much in his brief when he states:

Although the portion of the charge quoted in the text was made during an explanation of first-degree murder, it set forth a presumption both of intent, an element of first degree murder, and malice, an element of all murder. Thus, in repeating the charge, the court stated:

"Our Courts have said that he who uses a deady weapon without a sufficient cause of provocation must be presumed to do it wickedly or from a bad heart. That is the essence, Ladies and Gentlemen, of a willful, deliberate and premeditated killing, wherein against the essence of the killing is killing with malice aforethought where you find an intent to kill."

The instruction of a dual presumption was in accord with Penna. law. See *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970); *Commonwealth v. Green,* 294 Pa. 573, 144 A. 743 (1929).

Brief for Appellant at 16, ftn. 4.

The state of the law in Pennsylvania which was in effect at the time of appellant's trial has been set forth as follows:

this Court has consistently held that the use of a gun on a vital part of the deceased's body *raises the presumption* that the defendant shot with the intent to kill the deceased. *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A.2d 359; *Commonwealth v. Chapman,* 359 Pa. 164, 58 A.2d 433; *Commonwealth v. Scott,* 284 Pa. 159, 130 A. 317. However, the inference or presumption that arises from the intentional use of a deadly weapon on the vital part of

the body of another human being is merely a factual presumption. In the absence of any other evidence as to the defendant's intent, it is sufficient to sustain a finding of murder in the first degree. When evidence is introduced to overcome or rebut this presumption, the question of defendant's intent becomes one for the triers of fact. The triers of fact may, however, consider the presumption along with all other credible evidence presented on the issue of intent. *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A.2d 608; *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A.2d 359, *supra; Commonwealth v. Wucherer,* 351 Pa. 305, 41 A.2d 574; *Commonwealth v. Kluska,* 333 Pa. 65, 3 A.2d 398; *Commonwealth v. Troup,* 302 Pa. 246, 153 A. 337; *Commonwealth v. Green,* 294 Pa. 573, 144 A. 743; *Tiffany v. Commonwealth,* 121 Pa. 165, 15 A. 462.

*Commonwealth v. Ewing,* 439 Pa. 88, 91, 264 A.2d 661, 663 (1970) (Emphasis in original).

However, because appellant has raised the malice issue under the rubric of counsel's ineffectiveness, we must examine appellant's claim under our two prong test. First, we must determine if the issue counsel failed to raise is of arguable merit. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). Then, if the issue is of arguable merit, we must determine if counsel had a reasonable basis for not raising the issue. *Id.*

In examining the arguable merit of this particular issue, the case of *Commonwealth v. Stanton,* 316 Pa.Super. 397, 463 A.2d 19 (1983) is controlling. In *Stanton,* the defendant contended that counsel was ineffective for failing to object to a jury charge during a murder trial which also occurred under the old Crimes Code. According to *Stanton,* the trial court's charge "created either a conclusive or mandatory presumption that a killing which results from a voluntary act is malicious and is murder in the second degree. Such presumptions would constitute reversible error under *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and *Sand-*

*strom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)." *Id.*, 316 Pa.Superior Ct. at 400, 463 A.2d at 21.

The objectional jury charge contained the following language:

Now, if you find that this killing by the defendant resulted from a voluntary act without justification or excuse, the presumption is that the killing is malicious. Therefore, being presumed to be malicious, the killing would be presumed to be murder. All unlawful malicious killings are murder, but it is only where the elements of first degree murder have been proved to your satisfaction that a conviction for that degree could be had.

The court further instructed the jury:

In all unlawful killings without justification or excuse, where the act of slaying was voluntary, the presumption is that it is murder of the second degree only and the burden is upon the Commonwealth to prove that it is first degree murder.

*Id.*, 316 Pa.Superior Ct. at 398–399, 463 A.2d at 20–21.

We further commented:

In our evaluation of appellant's contention, we note that "[t]his Court has consistently held that, in reviewing jury instructions for prejudicial and reviewable error, the charge must be read and considered as a whole ... Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls." *Commonwealth v. Woodward*, 483 Pa. 1, 4, 394 A.2d 508 (1978) (citations omitted).

In reviewing the whole charge, we first conclude that the court's instruction in the second paragraph quoted above simply served to distinguish for the jury the difference between first and second degree murder.

The only presumption a reasonable juror could have interpreted the instruction as creating was that once murder was found, it was presumptively only second degree murder absent additional proof by the Commonwealth. Such a presumption certainly was not harmful to

appellant, but was, if anything beneficial to him under the 1939 Penal Code.[*]

As to the first paragraph quoted above, we find that the effect of the whole charge was to create merely a permissive presumption of malice.[**]  For example, the trial court specifically stated the following in its charge:

> Now, the use of a weapon such as a firearm, against a vital part of a person's body, such as the head or chest, is a fact from which you may infer the existence of malice.[***]

A permissive presumption is constitutionally valid if it can "be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82 (1969).  We have no difficulty in concluding with substantial assurance that malice is more likely than not to flow from the proof of an "unlawful killing without justification or excuse, where the act of slaying was voluntary.["]

Appellant also argues that the questioned instruction shifted the burden of production or persuasion to appellant to show justification or excuse.  Again, considering the entire charge, we believe the trial court clearly explained to the jury that the Commonwealth must prove all the factors upon which guilt may depend.

Therefore, we find that objections on the above grounds to the questioned portions of the charge would have been meritless.  Since counsel cannot be found ineffective for failing to advance a meritless claim, *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), we find no merit to appellant's first issue.

[*]  The 1939 Penal Code, in effect at the time of the Fineman killing, provided for only two degrees of murder:

All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of or attempting to perpe-

trate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree. All other kinds of murder shall be murder in the second degree.

18 P.S. § 4701.

[**] A permissive presumption "allows—but does not require—the trier of fact to infer the elemental fact from proof ... of the basic one and ... places no burden of any kind on the defendant." *Ulster County*, 442 U.S. at 157, 99 S.Ct. at 2224, 60 L.Ed.2d at 792.

[***] The testimony in this case revealed that appellant shot the victim in the head.

*Id.*

■ Similarly, we find that the jury instruction which was given during appellant's trial on the issue of malice "was to create merely a permissive presumption of malice." *Id.* The trial court reiterated that the prosecution had the burden of proving guilt beyond a reasonable doubt. Therefore, counsel cannot be found ineffective for failing to advance this claim. *Id.*

In any event, even if the issue is of arguable merit, counsel would have had a reasonable basis for not raising the issue sooner since the instruction was a correct statement of law at the time of appellant's trial. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

Appellant also argues that trial counsel was ineffective for failing to object to the psychiatrist's comment and also for failing to solicit certain testimony regarding appellant's convictions. Because these issues should have been raised sooner and also because appellant has failed to allege extraordinary circumstances for failing to raise the issues previously, these issues are deemed waived. *Commonwealth v. Hubbard, supra.*

Order is affirmed.

WICKERSHAM, J., did not participate in the consideration of nor decision in this appeal.