333 A.2d 765

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert LOWE, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 12, 1974.

Decided Jan. 27, 1975.

Rehearing Denied April 3, 1975.

Joseph Michael Smith, Philadelphia, for appellant.

James J. Wilson, Asst. Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Asst. Chief, Appeals Div., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Richard A. Sprague, First Asst. Dist. Atty., F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Robert Lowe, the appellant, was convicted in a nonjury trial of voluntary manslaughter. Post trial motions were denied and Lowe was sentenced to ten years probation. This appeal followed.

Lowe initially contends the evidence was insufficient to support the finding of voluntary manslaughter, but, on the contrary, established the killing was committed in self-defense.

On appeal from a criminal conviction, the test for evaluating the sufficiency of the evidence is whether, viewing the entire record in the light most favorable to the Commonwealth, a finder of fact could reasonably have found that all elements of the crime charged had been

proved beyond a reasonable doubt. *Commonwealth v. Lee,* 450 Pa. 152, 299 A.2d 640 (1973). Read in the light most favorable to the Commonwealth, the instant record discloses the following pertinent facts:

On May 20, 1972, Lowe shot and killed Bernard Walker in a dispute between neighbors. At the time, Walker lived at 3231 Monument Street, Philadelphia. He had three stepsons: Kenny Jackson (aged 19); Larry Jackson (aged 17); and, Joseph Jackson (Jo-Jo, aged 15). Lowe lived two doors away at 3227 Monument Street with his wife and children. He had moved into the neighborhood eight months previously. The family of Sam DeShields occupied the house between the Lowes and the Walkers at 3229 Monument Street.

A few days prior to the fatal evening, Lowe had complained to the police that Neil Williams of 3222 Monument Street had raped his daughter Margaret. Neil was fifteen and Margaret fourteen. The police had taken Neil Williams into custody on May 15, 1972, for questioning regarding this alleged incident, but he was released when the girl admitted that the relations were consensual. Neil Williams was accompanied to the police station by his mother and brother, Robert Williams.

On the afternoon of May 20, 1972, Lowe came out on his porch and observed Robert Williams standing with Larry Jackson and Sam DeShields on the DeShields' porch next door. Lowe challenged Williams to a fight for comments Williams had made at the police station. Disparaging remarks were exchanged between the group of boys and Lowe. Kenny Jackson, overhearing the exchange from inside, emerged to accept Lowe's challenge. Before any blows were struck the fight was broken up by DeShields. As Kenny Jackson returned to his house, Lowe ran toward his own residence shouting that he was going to get a rifle and shoot someone. Momentarily, Lowe emerged from his house waving the rifle. He aimed at the group of boys still standing on the De-

Shields' porch, and fired at least one shot[1] at Larry Jackson, as the individuals scattered into the house for cover.

Neighbors called the police. Lowe denied having a gun when questioned by the police. He was frisked and the first floor of his house was searched, but no weapon was found. At this point, Bernard Walker, the victim, rushed onto Lowe's porch and managed to punch Lowe before the police separated them. The police escorted Walker to his home, and cautioned him to remain there. Lowe was also instructed to stay indoors.

After the police left the scene, however, Walker stepped over onto Lowe's porch and knocked on the door. When Lowe answered, Walker stated he wished to speak with Lowe "man-to-man." Lowe slammed the door in Walker's face. Walker then stepped over onto the De-Shields' porch, and was conversing with a group of boys, when Lowe stepped out of his house with the rifle and fired a shot at Walker, but the shot missed. The group on the DeShields' porch scrambled toward the vestibule of the DeShields' house. Lowe leaned over the banister, separating the two porches, and fired a second shot which struck Walker and fatally wounded him.

To rebut the Commonwealth's evidence, Lowe took the stand. His testimony, in direct contradiction to the Commonwealth's eyewitnesses, was that Walker, at the head of a shouting mob, banged on Lowe's door. Lowe slammed the door shut, and started to the back door with his family, but members of the group were coming over the back fence. Slamming the back door shut, Lowe grabbed his rifle. He could hear the crowd outside yell-

---

1. The Commonwealth produced five eyewitnesses to the events. Janie Davis and Ann Marie Coleman, neither of whom had any connection with the participants, testified that Lowe twice aimed the rifle at Larry Jackson and pulled the trigger, but the first time the rifle was not loaded. Kenny Jackson corroborated this testimony. Neil Williams and Larry Jackson stated that Lowe fired two shots.

ing obscene threats. At this point, Walker burst open the front door, and yelled, "Shoot m. f. or you've had it." Walker had his right hand in his pocket. Lowe shot Walker as he attempted to cross Lowe's threshold.

Two witnesses, Lowe's wife and one Elmo Swanson, corroborated the essentials of Lowe's version of the shooting.

Lowe argues that it was physically impossible for the shooting to have occurred as described by the Commonwealth's witnesses, when the angle of penetration of the bullet and the relative heights of Lowe and Walker are taken into account. On the other hand, he contends the shooting could have occurred as he described it, and thus his testimony should have been credited. However, Lowe's position is not supported by the record. The Medical Examiner, after describing the course of the fatal bullet, testified that the wound was consistent with both the Commonwealth's and the defense's factual theories.

 To establish self-defense, the following elements must be shown: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) the slayer must have reasonably believed that he was in imminent danger of death, great bodily harm or some felony, and that there was a necessity to kill in order to save himself therefrom; (3) the slayer must not have violated any duty to retreat or avoid the danger. *Commonwealth v. Tiernan*, 455 Pa. 88, 90–91, 314 A.2d 310 (1974) ; *Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970). However, even if we were to assume that the testimony offered by Lowe established the claim of self-defense, it was for the trier of fact to accept or reject Lowe's version of the confrontation, to determine where the truth lies and to find the facts. *Commonwealth v. Zapata*, 447 Pa. 322, 326, 290 A.2d 114, 117 (1972). While accounts corroborative of Lowe's version were related by Lowe's

wife and Swanson, both were subject to impeachment through prior inconsistent statements given to the police shortly after the shooting. It is also well-settled that " 'a [trier of fact] can believe all or part or none of a defendant's statements . . . . ' " *Commonwealth v. Ewing*, 439 Pa. 88, 93, 264 A.2d 661, 663 (1970); *Commonwealth v. Kirkland*, 413 Pa. 48, 195 A.2d 338 (1963). The trial court had a right to disregard Lowe's exculpatory version of the shooting. The trial court's finding that Lowe was guilty of voluntary manslaughter, and had failed to establish the claim of self-defense is fully supported by the record.

Lowe also asserts the trial court erred in admitting into evidence testimony by a police detective that no bloodstains matching the victim's blood were found on Lowe's front porch. While a timely objection was made at trial, the issue was not raised in the post trial motions, and, hence, may not now be asserted. *Commonwealth v. Clair*, Pa., 326 A.2d 272 (1974); *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).

Order affirmed.