330 A.2d 844

**COMMONWEALTH of Pennsylvania**

v.

**Terrance CAMP, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 22, 1974.

Decided Jan. 27, 1975.

David Cohen, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Bonnie Leadbetter, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Terrance Camp, was tried by a judge sitting without a jury and found guilty of murder in the second degree and violations of the Uniform Firearms Act. Post-trial motions were denied and appellant was sentenced to a term of two and one-half to thirteen years in a state correctional institution; sentence on the firearms violations was suspended. This appeal followed.

The facts surrounding this appeal are as follows: On August 14, 1973, appellant, a postal worker who delivered mail, was having lunch at a restaurant in Philadel-

phia. While eating lunch he was approached by Hubert Bronzell (the decedent) and Bobby Reed (Reed). The decedent and Reed showed appellant a gun and demanded the relief checks appellant was to deliver on his postal route; appellant refused. The following day the pair visited appellant at the post office and repeated their demands. Appellant again refused. Early the next afternoon, while appellant was eating lunch, the pair approached him, again produced a gun and told him to meet them at 2:00 or 2:30 p. m. at a bar located at Second and York Streets. Eugene Hargrave testified that on the day of the homicide he met appellant and appellant asked him to accompany him to the bar where he was to meet the decedent and Reed. According to Hargrave, appellant told him of the threats but he agreed to go to the bar anyway. Hargrave further testified that shortly after he and appellant entered the bar, Reed arrived. Hargrave then went to Reed and told him not to start anything because appellant had a gun, to which Reed replied: "Let him tell me that." Hargrave stated that after he told appellant what Reed said, Reed started to leave the bar when the decedent, Hubie Bronzell, appeared at the door of the bar. Hargrave stated that he went to the decedent and told him that appellant had a gun, and that while Hargrave and the decedent were talking, appellant came up behind them and the decedent asked: "Ain't nothing happening, man?" to which appellant replied "No." The decedent then turned to walk away and started across the street, and while the decedent was turning to say something to appellant, appellant opened fire on the decedent. Hargrave then stated he asked appellant, "Man, what are you doing?" Appellant did not respond. Hargrave stated that he saw no gun in the possession of the decedent, but that he saw appellant pull his gun from under his hat.

Francis Crumty testified that on the day of the murder he was employed by the Water Department of the

City of Philadelphia, and was across the street from the bar where the homicide occurred. He stated that about 2:00 p. m. he saw three people come out of the Chatterbox Bar, two of whom, the decedent and another man, seemed to be together and were in front. He stated a man in a postman's uniform was behind them. He further testified that decedent's companion stated, "Come on, let's go." Whereupon, the decedent turned to his left and faced the man with the gun who fired one shot. Crumty said that after a pause the man fired four or five more shots and put something in his pocket.

Miss Mayberry, an employee of the bar where the homicide occurred, stated that appellant entered the bar alone at about 2:00 p. m. on the day of the murder and asked for Bobby Reed. Not finding Reed, appellant left and returned shortly with Eugene Hargrave, and the pair started drinking. Shortly thereafter, Reed entered. Hargrave spoke to Reed and as Reed was leaving, the decedent appeared at the door. Appellant then left the bar and Miss Mayberry heard shots and saw the decedent staggering across the street and appellant running up the street. She further stated that appellant had been patronizing the bar for about a year and a half, and was usually there with Bobby Reed or Eugene Hargrave.

Appellant, testifying on his own behalf, stated that he went to the bar to meet Reed and the decedent because he felt that if he did not they would hurt his family. He further stated that the shooting occurred because while he was talking to the decedent outside the bar, the decedent made what he thought was an attempt to get a gun from his belt. Appellant stated that upon seeing this, he drew his gun and fired. Appellant, on cross-examination, stated that the decedent threatened him with a gun a day before the homicide at a restaurant, and that there was a policeman in the restaurant, but that he failed to report it to the policeman, nor did he report the threats

to his supervisors at the postal department. He did, however, tell fellow employees about the threats.

■ Appellant first argues that the homicide was committed in self-defense. We do not agree. The record reveals that the appellant, rather than being free from fault in provoking or continuing the difficulty which resulted in the killing, was directly responsible for its occurrence. Appellant went to the bar armed and looking for the persons who threatened him. This sort of conduct takes this homicide out of the category of self-defense. See *Commonwealth v. Walker*, 447 Pa. 146, 288 A.2d 741 (1972).

■■ In the alternative, appellant argues that if the homicide was not done in self-defense, it was committed out of an unreasonable fear for his life and thus makes the crime voluntary manslaughter and not murder in the second degree. While agreeing with appellant's legal proposition, the facts defeat his argument. Only appellant's testimony established that the decedent was making a gesture towards his belt as if to produce a gun. Two other witnesses to the homicide, Hargrave and Crumty, established that appellant produced a weapon and shot the victim without the victim reaching for a weapon, thus negating appellant's theory of the homicide. Based on the testimony of the witnesses, the trial court had ample evidence to convict appellant of murder in the second degree. See *Commonwealth v. Ware*, 453 Pa. 15, 307 A.2d 840 (1973).

Judgment of sentence affirmed.

NIX, J., took no part in the consideration or decision of this case.