373 A.2d 449

**COMMONWEALTH of Pennsylvania**

v.

**Albert NAU, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 24, 1976.

Decided Feb. 28, 1977.

Reargument Denied June 3, 1977.

Robert Davis Gleason, Johnstown, for appellant.

Ralph F. Kraft, Asst. Dist. Atty., Ebensburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

Appellant, Albert Nau, was convicted of murder of the third degree on May 12, 1975, in a nonjury trial before the Court of Common Pleas, Cambria County. Post-trial motions were denied and appellant was sentenced to a term of imprisonment for a period of two years to fifty-nine months. This appeal followed.

This case evolved from the slaying of Edward Nau on October 9, 1974, in Stonycreek Township, Cambria County. The pertinent circumstances surrounding the killing are as follows. The appellant and the deceased were brothers. They had worked together sporadically in the construction and mining businesses until about 1941. Apparently the relationship between the two brothers had always been volatile and during an altercation in 1941 over the purchase of a coal screen the deceased allegedly

4

struck the appellant.[1]  The confrontation precipitated the sale by appellant of his interest in the coal mine, which he and Edward had operated together with another individual.  After 1941, the appellant and his brother saw one another only on rare occasions, although they both continued to live in the Johnstown area.  From the record and the findings of the trial judge it appears that on the day of the killing, October 9, 1974, the deceased, who was in his truck, and the appellant, in his automobile, passed one another at a slow speed near the intersection of Bedford Street and Annie Avenue in Johnstown, Pennsylvania.  The appellant, as he passed his brother, shouted to him that he wanted to talk to him.  (According to appellant he wanted to speak with him about their sister's social security check which his brother allegedly had taken.)  Appellant testified that his brother called him an obscene name and then drove away.  Believing that his brother had gone to his sister's house appellant then drove there in search of him.  Not finding his brother at his sister's, appellant drove to Strayer & Co., in the Walnut Grove area of Johnstown, where he knew his brother rented a storage area.  When he arrived, appellant's brother was in his truck talking with Robert E. Strayer, who was standing outside the truck door.  Appellant drove past, made a U-turn, and parked in the parking lot diagonally from his brother's truck, but facing toward Bedford Street.  The two vehicles were approximately twenty-seven feet apart.  When the deceased recognized the appellant, he told Strayer that the man in the automobile was his "crazy brother" and "we're going to have a fight".  Strayer testified that he saw the deceased pick up a hatchet from the floor and place it on the seat.  Appellant apparently shouted some-

1.  There was also testimony by Nau that his brother, Edward, had struck him for no apparent reason while they were working on a construction site for their father in 1927.  Despite the remoteness, this evidence was admitted for the purpose of showing the victim's violent disposition toward the appellant.

thing at the deceased but Strayer was unable to hear what was said. After a few minutes deceased opened the door and started out of the truck. When the deceased reached the edge of the truck door the appellant shot him. At this time Strayer testified that appellant was standing a few steps from his vehicle, had both arms extended and was holding the gun in his hand. After the first shot, the deceased grabbed himself around the chest area and started staggering in a spinning motion towards the front of the truck while clutching his chest. He had nothing in his hands. When the deceased reached the left front headlight of the truck, the appellant fired a second shot. The deceased then staggered around the truck and fell on the opposite side. The appellant immediately left the scene.

Although he admitted firing the shots which killed his brother, appellant claims he did so because the deceased was advancing toward his automobile with the hatchet in his hand. Appellant testified that when he saw his brother climbing out of his truck with the hatchet, he became very "scared". He then reached in his glove compartment, grabbed his gun and jumped out of his vehicle. Appellant advanced five or six steps toward his brother's truck and fired two shots at his brother, who appellant thought was going to either hit him with the hatchet or throw it at him.

The pathologist who performed the autopsy testified the bullet causing death entered the right side of the deceased's body. The second bullet, which would not have been terminal, also entered on the right side and passed through the body. The pathologist was unable to determine which shot was fired first. From the autopsy report it can be concluded that the deceased was standing sideways in relation to the appellant at the time when the first shot was fired, and that both shots penetrated

the right side of the deceased, thus contradicting appellant's testimony that the deceased was advancing toward him.

Dr. Murray K. Teris, a clinical psychologist, testified that he had examined the appellant for about two and one half hours approximately six months prior to trial. In response to a hypothetical question he testified that the defendant believed at the time of the shooting (1) defensive action was necessary, and (2) he was in a situation of mortal danger. In his view, the state of mind was not under "heat of passion" but one of "enormous anxiety". On this appeal, appellant has advanced two arguments which he wishes this Court to consider. Appellant's first argument is that the trial court should have found the appellant innocent on the basis that the appellant acted in self-defense. Even a cursory review of the record in this case indicates that this argument is devoid of any merit.

In order to establish self-defense, the following elements must be shown: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) the slayer must have reasonably believed that he was in imminent danger of death, great bodily harm or some felony, and that there was a necessity to kill in order to save himself; (3) the slayer must not have violated any duty to retreat or avoid the danger. *Commonwealth v. Lowe,* 460 Pa. 357, 361, 333 A.2d 765, 767 (1975); *Commonwealth v. Mahoney,* 460 Pa. 201, 331 A.2d 488 (1975); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974). Even if we were to assume that the testimony offered by Nau established the claim of self-defense, it was for the trier of facts to accept or reject Nau's version of the confrontation. *Commonwealth v. Lowe, supra; Commonwealth v. London,* 461 Pa. 566, 337 A.2d 549 (1975).

■  Here, however, the trial court properly could have determined that the claim of self-defense failed on the basis that: (1) the appellant was not free from fault in provoking or continuing the difficulty which resulted in the killing;[2] (2) the appellant's belief that he was in imminent danger was not a reasonable one;[3] or, that the appellant violated the duty to retreat to avoid the danger. Thus, we believe that the trial court's rejection of appellant's claim of self-defense was supportable by the evidence.

Appellant's next argument in support of a new trial demands more extended consideration. It is the contention of the appellant that even if the court properly rejected his claim of self-defense the court should have found, as a matter of law, that appellant was guilty of voluntary manslaughter, rather than murder of the third degree.[4] Appellant urges that under the circumstances of this case the provisions of Title 18 P.S. Section 2503(b)[5] are controlling and, therefore, appellant could

2. Cf. *Commonwealth v. Camp*, 459 Pa. 569, 330 A.2d 844 (1974).

3. *See, e. g., Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975).

4. Under the New Crimes Code, murder of the second degree is committed when the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony (formerly murder of the first degree). *See* Act of March 26, 1974, P.L. 213 No. 46, § 4, 18 Pa.C.S. § 2502(b). Murder of the third degree (formerly murder of the second degree) includes all other kinds of murder which are not either of the first or second degrees. *Id.* at § 2502(c).

5. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 2503(b), provides:
   "A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that if they existed would justify the killing under Chapter 5 of this title, but his belief is unreasonable."
   The applicable section of Chapter 5 to the immediate case is 18 Pa.C.S. § 505, which provides, in part:
   "(a) *Use of force justifiable for protection of the person.*—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for

only be found guilty of voluntary manslaughter. We do not agree.

■ It is true that if appellant was acting under fear for his own life at the time he fatally shot his brother, then even though his fear was unreasonable, "if it *actually* motivated appellant, his crime would be voluntary manslaughter, not murder." *Commonwealth v. Monroe,* 457 Pa. 590, 593, 322 A.2d 100, 101 (1974). *See Commonwealth v. Miller,* 448 Pa. 114, 290 A.2d 62 (1972); *Commonwealth v. Principatti,* 260 Pa. 587, 104 A. 53 (1918). In *Commonwealth v. Jennings,* 442 Pa. 18, 23, 274 A.2d 767, 769–70 (1971), this Court acknowledged:

" . . . where a defendant acts under an unreasonable fear that he is in danger of serious bodily harm, there may be a direct and specific intent to kill, and yet the offense may constitute voluntary manslaughter. *Commonwealth v. Jordan,* 407 Pa. 575, 585, 181 A.2d 310, 316; *Commonwealth v. Thompson,* 389 Pa. 382, 394, 133 A.2d 207, 214."

*Accord, Commonwealth v. Robinson,* 452 Pa. 316, 305 A. 2d 354 (1973).

■■ The alleged fear of the appellant (even though unreasonable) in effect may be considered for the purpose of negating the element of malice, the presence of which would otherwise make the homicide murder and not manslaughter. But, the appellant must have acted out of an honest and good faith belief that he was in imminent danger of death or serious bodily harm. Such

the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."
This category of manslaughter (voluntary, brought about through the influence of a passion or fear) which is provided for under the above quoted provisions of the Crimes Code has long been the established law in this Commonwealth. See *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. Miller,* 313 Pa. 567, 569, 170 A. 128 (1934); *Commonwealth v. Principatti,* 260 Pa. 587, 104 A. 53 (1918); *Commonwealth v. Colandro,* 231 Pa. 343, 80 A. 571 (1911).

fear must be *actually entertained,* and the killing committed pursuant to the bona fide belief that it was absolutely necessary in self-defense. Even if we accept appellant's argument that his testimony was sufficient to establish that voluntary manslaughter was a proper verdict on the theory that appellant was in imminent fear for his life (though not reasonably justified) we are not persuaded that appellant is entitled to a new trial. The credibility of appellant's version of the homicide was a determination to be made by the trier of facts.

Murder of the third degree (formally murder of the second degree) is an unlawful killing with malice expressed or implied, but absent any specific intent to take a life. *See Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972); *Commonwealth v. Tyrrell,* 405 Pa. 210, 174 A.2d 852 (1961). We are convinced from our examination of the record that the evidence was sufficient to permit the trial court to find the presence of malice necessary for murder of the third degree. In *Commonwealth v. Hornberger,* 441 Pa. 57, 61, 270 A.2d 195, 197 (1970), this Court recognized:

"Legal malice exists not only where there is a particular ill will, but also whenever there is wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind unconcerned with social duty. It may be . . . inferred from the intentional use, without legal excuse or justification, of a deadly weapon on a vital part of another human being."

*See also Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975).

In the instant case the appellant and the deceased had left their vehicles almost simultaneously. According to the testimony of Strayer, the appellant had advanced several feet from his vehicle, while the deceased had advanced only to the edge of his truck door

and was not facing the appellant when the appellant fired the first shot at the deceased. The second shot was fired into the deceased when he was unarmed and as he was staggering away from the appellant. We believe these facts clearly support a finding of murder of the third degree and, therefore, reject appellant's proposition that as a matter of law he was guilty only of voluntary manslaughter. In *Commonwealth v. Culmer*, 463 Pa. 189, 344 A.2d 487, 489 (1975), this Court in an analogous factual setting affirmed a finding of murder of the second degree (now third degree). Concerning the possibility of voluntary manslaughter as the proper verdict, we emphasized that:

> "It is clear that the facts of this case would permit a trier of facts to find the presence of malice beyond a reasonable doubt. . . . [A]lthough the fact finder could have accepted a version of the facts consistent with a manslaughter verdict, in fact he did not."

Moreover, our review of criminal convictions in such cases is clearly established:

> "On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. *Commonwealth v. Woodhouse*, 401 Pa. 242, 261, 164 A.2d 98 (1960). To do so would require an assessment of the credibility of the testimony and that is clearly not our function. *Commonwealth v. Sullivan*, 436 Pa. 450, 456, 263 A.2d 734 (1970) cert. denied, 400 U.S. 882, 91 S.Ct. 127, 27 L.Ed.2d 120; *Commonwealth v. Schuck*, 401 Pa. 222, 228, 164 A.2d 13 (1960), cert. denied, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961)."

*Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). It was for the trier of facts to accept or reject appellant's claim that he was operating under an uncontrollable fear for his life when he shot his brother. *Commonwealth v. London*, 461 Pa. 566, 337 A. 2d 549 (1975) ; *Commonwealth v. Lowe*, 460 Pa. 357, 333

A.2d 765 (1975); *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972).

Our review of the record reveals no reason for disturbing the verdict of guilty of murder of the third degree or the judgment of sentence imposed in the instant case.

Judgment of sentence affirmed.

MANDERINO, J., concurs in the result.