383 A.2d 490

**COMMONWEALTH of Pennsylvania**

**v.**

**John COLBERT, Appellant.**

Supreme Court of Pennsylvania.

Reargued Nov. 15, 1976.

Decided Jan. 26, 1978.

James J. Phelan, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Maxine Stotland, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM.

The Court being equally divided, the judgment of sentence is affirmed.

JONES, former C. J., did not participate in the decision of this case.

EAGEN, C. J., filed an opinion in support of affirmance in which POMEROY and NIX, JJ., joined.

ROBERTS, J., filed an opinion in support of reversal in which O'BRIEN and MANDERINO, JJ., joined.

## OPINION IN SUPPORT OF AFFIRMANCE

EAGEN, Chief Justice.

Appellant, John Colbert, was convicted by a jury of murder of the first degree for the killing of Andrew Banks. Post-verdict motions were denied and a sentence of life imprisonment was imposed as the jury directed. This direct appeal followed.

Colbert now advances numerous assignments of error in support of reversal of the judgment of sentence and the grant of a new trial.[1]  For the reasons stated herein, I would affirm the judgment of sentence.

1. Colbert's brief contains a statement of issues which lists eighteen claims of error.  Fewer than half of these are included in the "discussion" portion of the brief.  As the Commonwealth correctly argues, many of these claims are waived.

On December 3, 1972, at approximately 9:39 p. m., Officers Leonard Mack and Luke Kirby of the Philadelphia Police Department responded to a call to investigate a disturbance at 1501 West Girard Avenue in Philadelphia. Upon their arrival at that address, the officers proceeded to the third floor apartment of Thomas Green where they found Andrew Banks lying in a pool of blood with a knife next to him. The officers removed Banks to Saint Joseph's Hospital where he was examined and pronounced dead. The

Since the relevant events involved herein predated *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), claims of error on appeal are considered if they were presented orally or in writing to the post-verdict motions court. *Commonwealth v. Bailey*, 463 Pa. 354, 344 A.2d 869 (1975). But absent presentment to and consideration by that court, such claims will not be considered on appeal. *Commonwealth v. Moore*, 462 Pa. 231, 340 A.2d 447 (1975); *Commonwealth v. Reid*, 458 Pa. 357, 326 A.2d 267 (1974); *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973); *Commonwealth v. Bittner*, 441 Pa. 216, 272 A.2d 484 (1971); *Commonwealth v. Myers*, 439 Pa. 381, 266 A.2d 756 (1970). Colbert filed boiler-plate motions and "reserved" the right to file additional assignments of error. None such was filed. From the record before us there is no indication that any of the following claims were presented to or considered by the post-verdict motions court, and thus these claims are not properly before us.

1) the suppression court erred in failing to grant Colbert's pretrial motion to suppress evidence of a certain statement given by him to police;

2) the trial court erred in allowing cross-examination of a defense witness about prior convictions for burglary and larceny;

3) the trial court erred in not granting a mistrial or giving cautionary instructions following certain remarks by the assistant district attorney; (Defense counsel moved to strike the remarks, this was granted. No further motion was made.);

(4) the trial court erred in permitting redirect examination of witnesses for the Commonwealth;

(5) the trial court erred in permitting rebuttal evidence to be introduced by the Commonwealth;

(6) the trial court erred in excepting a police officer from a sequestration order in effect during trial;

(7) the trial court erred in not granting a continuance until a defense witness "sober[ed] up." (The defense called the witness and never sought a continuance or recess.);

(8) the trial court erred in not directing the Commonwealth to provide defense counsel with a prior statement made by a defense witness to police in order to corroborate the witness' testimony where no assertion was made that his testimony was fabricated;

(9) the trial court erred in refusing to admit into evidence specific instances of violent conduct on the part of the victim in order to support a claim of self-defense.

cause of Banks' death was later established as a single stab wound of the chest. John Colbert was arrested in connection with this incident on December 4, 1972, at approximately 2:10 a. m. at 1140 East Phil-Ellena Street and was subsequently charged with Banks' murder.

The evidence at trial clearly established Colbert fatally stabbed Banks in the chest with a butcher knife.[2] The Commonwealth introduced, inter alia, two statements made by Colbert to the police in which he admitted the stabbing, and Colbert's own testimony at trial conceded this fact. There is a sharp conflict, however, between the testimony presented by the Commonwealth and that presented by the defense as to the circumstances which surrounded the killing.

An eyewitness, Joseph Cox, testified as a Commonwealth witness that the stabbing was completely unprovoked. However, he admitted Colbert had been drinking intoxicants before the incident and was "intoxicated" at the relevant time.[3]

Colbert's defense, on the other hand, attempted to establish that the killing was committed while he was intoxicated and/or was committed in self-defense. Testifying in his own behalf, Colbert stated that he, Banks, Cox and others were drinking in a first floor apartment at 1501 West Girard Avenue for most of the day on December 3, 1972; they later went up to Green's third floor apartment and continued drinking. Colbert further testified that an argument devel-

2. The Commonwealth introduced into evidence the knife which was found next to Banks' body in the third floor rear apartment at 1501 West Girard Avenue. This knife was described as a "butcher's type knife" with a brown handle and a blade approximately 4″ to 5″ long. The Commonwealth also presented testimony that this knife was stained with blood of a type matching that of the victim.

3. The Commonwealth also established by stipulation that Colbert had been arrested on October 28, 1972, and charged with assault with intent to maim. The stipulation recited an allegation that at that time Colbert had thrown gasoline on Banks and attempted unsuccessfully to light it. The stipulation further recited that Colbert was found not guilty of this charge on March 26, 1973, or approximately four months after Banks' death.

oped between himself and Banks while they were on the first floor. The argument grew out of Banks' accusation that Colbert was "going with [Banks'] girlfriend." According to Colbert, the argument flared up again in Green's apartment and during the course of the disagreement, Banks lunged at Colbert with a pocketknife. In retaliation, Colbert stabbed Banks with a kitchen knife he carried in his pocket.[4]

The following issues were presented either orally or in writing to the post-verdict motions court and considered by it. Since the relevant events predated *Commonwealth v. Blair*, supra, I will consider them.

Colbert initially claims that the evidence established as a matter of law that a) he acted in self-defense and/or b) he was intoxicated.

As noted above, Colbert presented testimony to support a finding that Banks initiated the incident by lunging at Colbert with a pocketknife. Colbert also testified that Banks had attacked him on a prior occasion and had threatened his life "three or four times." In addition, testimony was introduced to show that Banks had a violent disposition. The Commonwealth, however, disputed Colbert's claim of self-defense. Specifically, the Commonwealth refuted Colbert's version of the stabbing with Cox's testimony and with the testimony of police witnesses which demonstrated that the knife Banks was alleged to have wielded against Colbert in Green's apartment was never found, despite a thorough search by the police.[5]   Finally, Detective Donald Lyons

---

**4.** Colbert also presented the jury with his version of the October 28th incident. He maintained Banks had attacked him with a knife on that date, threatening his life. Subsequent to that attack, Colbert related that he threw a whiskey bottle at Banks. He denied attempting to ignite any liquid on Banks' body and emphasized to the jury he was found not guilty of the charges brought against him in connection with that incident.

**5.** Officer Kirby testified that Banks' body and clothing were searched in his presence by a medical examiner on the night of the killing and no knife was recovered therefrom. The Commonwealth also presented the testimony of Sergeant Joseph Stine, Officer Marvin Jenkins and Detective Donald Lyons, which established that the

testified during rebuttal that he had searched police records and found no indication Banks had ever been arrested.

Even assuming that the defense testimony was sufficient to warrant a finding that Colbert stabbed Banks in self-defense, the truth of this testimony was for the jury. The fact finders were free to accept or reject Colbert's version of the stabbing. *Commonwealth v. Nau*, 473 Pa. 1, 373 A.2d 449 (1977); *Commonwealth v. Lowe*, 460 Pa. 357, 333 A.2d 765 (1975). Presented with a clear conflict in the testimony, the jury had a right to resolve the conflict against Colbert. *Commonwealth v. Lowe*, supra. Thus, Colbert's claim that the evidence established self-defense as a matter of law must be rejected.

Similarly, Colbert contends the evidence established intoxication as a matter of law and therefore, he argues, the jury should not have been permitted to return a verdict higher than murder of the second degree.[6] The Commonwealth did not refute the evidence showing Colbert had been drinking prior to the killing and while, from this evidence it could be argued that Colbert was intoxicated when he stabbed Banks, the Commonwealth vigorously disputed Colbert's contention that his drinking had so affected his mental capacity that it rendered him unable to formulate the specific intent to kill required to sustain a conviction for murder of the first degree. In addition to his own testimony that he had been drinking "wine, beer and whiskey" all day on December 3, 1972, Colbert's claim of intoxication is based on Cox's testimony that Colbert was "intoxicated" and the testimony of Cox's sister, Mae Hunt, that Colbert "could hardly stand up" when he arrived at her house at 10:30 p. m., approximately one hour after the stabbing occurred. The Commonwealth countered with the testimony of Detective Lyons, who ar-

police arrived at 1501 West Girard Avenue within approximately ten minutes of the killing and shortly thereafter conducted a thorough search of Green's apartment and the area outside the building, particularly the area below the windows of Green's apartment. The only knife recovered as a result of this search was Colbert's.

6. The trial predated the effective date of the New Crimes Code.

rested Colbert on December 4, 1972, at approximately 2:10 a. m., and testified that, although Colbert's eyes were bloodshot and he smelled of alcohol, Colbert had no difficulty walking, that his speech was not slurred or otherwise abnormal, and that he communicated in a normal, responsive manner. Finally, it is worth noting that Colbert during his own testimony did not profess to have been intoxicated, but rather purported to recall the stabbing and subsequent events quite clearly.

It is well-established that evidence of intoxication is relevant to the question of a defendant's capacity to possess the specific intent required to sustain a conviction of murder of the first degree. *Commonwealth v. Haywood*, 464 Pa. 226, 346 A.2d 298 (1975); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974); *Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1970). In the instant case, the question of Colbert's intoxication was in dispute, and since the jury was free to believe all or part or none of the evidence presented, *Commonwealth v. Lowe*, 460 Pa. 357, 333 A.2d 765 (1975), this question was properly left for decision by the jurors, who resolved the issue adversely to Colbert. *Commonwealth v. Padgett*, 465 Pa. 1, 348 A.2d 87 (1975); *Commonwealth v. Grello*, 464 Pa. 250, 346 A.2d 543 (1975); *Commonwealth v. Fostar*, supra; see and compare *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968). Hence, Colbert's claim of error on this point should be rejected.

Colbert next challenges the admissibility of two Commonwealth exhibits, namely, the medical examiner's body receipt and certificate of search, which inventoried Banks' clothing and the items found as a result of a search of this clothing. Defense counsel objected at trial to the admission of these exhibits on the ground they were not properly authenticated. The record shows, however, that each of these documents was identified and verified as accurate by Officer Kirby, one of the officers who delivered Banks' body to the morgue and in whose presence the search was conducted; Kirby's signature appeared on each of the docu-

ments. As such, I perceive no abuse of discretion in admitting these exhibits into evidence. See generally *Commonwealth v. Morgan*, 448 Pa. 494, 295 A.2d 77 (1972); *Brenner v. Lesher*, 332 Pa. 522, 2 A.2d 731 (1938).

Colbert next complains that the stipulation relating to the October 28th incident between himself and Banks was not fully explained to the jury by the trial court; he contends the trial court should have specifically informed the jury that the stipulation merely recited an allegation that he had attempted unsuccessfully to set Banks afire, rather than establishing as fact that he had done so.

The stipulation, as read to the jury, clearly recited that Colbert had been arrested on a charge of assault with intent to maim Banks, that it "was *alleged* at that time that John Colbert had thrown gasoline on Andrew Banks and attempted unsuccessfully to light it", and that Colbert had been found not guilty of these charges. As such, the foregoing stipulation accurately informed the jury of the agreement reached between the defense and the Commonwealth regarding the facts surrounding the October 28th incident.

As noted earlier, Colbert also presented the jury with his version of the events of October 28th. He maintained that Banks had attacked him with a knife on that date, threatening his life, and that after the attack he had thrown a whiskey bottle at Banks. He denied attempting to ignite any liquid on Banks' body and emphasized to the jury he was found not guilty of the charges brought against him in connection with that incident.

There is no indication whatsoever that the trial court distorted the substance of the stipulation agreed to by the parties. On the contrary, the record shows the trial court took pains to state in its charge to the jury exactly what the stipulation encompassed. Nor is there any indication in the record that the trial court suggested to the jury an interpretation of the stipulation disfavoring Colbert. The trial court instructed the jury, at the time the stipulation was introduced and again before the jury retired to deliberate, that

the stipulation was not to be considered as evidence of a criminal disposition on Colbert's part, that "because John Colbert was involved in an incident with Andrew Banks on a prior occasion, that does not mean that, therefore, he committed this offense." Also, the court instructed the jury the stipulation was to be considered only as bearing on "the state of mind or the intent of the defendant" as to the victim on October 28th. In view of Colbert's strategy of self-defense and explanation of the October 28th incident, the trial court's references to the relationship between the prior incident and Colbert's state of mind were neutral. Indeed, defense counsel argued during summation that the incident on October 28th provided a foundation from which the jury could find Colbert reasonably feared his life was in danger on December 3, 1972.

■ Finally, to the extent Colbert now argues the prior allegation against him should not have been admitted for any purpose because of the subsequent acquittal,[7] his argument is without merit. Any claim of error regarding the admissibility of the prior allegation against Colbert was waived when the defense agreed to the stipulation. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Thus, since defense counsel agreed to the stipulation and since the trial court fairly instructed the jury as to the substance and effect of the stipulation, I am not persuaded the trial court committed reversible error in regard thereto.

Colbert next argues the trial court "erred in refusing requested points for charge" and "failed to adequately charge the jury on the law concerning the offense of voluntary manslaughter."

■ The points for charge which Colbert argues the court erred in refusing were either covered in the court's charge,

7. Colbert now argues that it was error to admit any evidence of his prior arrest in connection with the October 28th incident. In support of this argument, Colbert's brief alleges that the defense agreed to the stipulation only after the trial-court overruled an objection to the admission of any testimony regarding the prior incident. This allegation is totally without support in the record.

542

constitute legal arguments on matters such as the admissibility of evidence, or were inapplicable given the evidence presented at trial.[8]

A study of the court's charge persuasively demonstrates it was completely adequate on the crime of voluntary manslaughter. Moreover, Colbert fails to point out any specific inadequacy.

Finally, Colbert argues the trial court erred in its charge to the jury by placing the burden of proving intoxication on the defense, citing *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). The trial involved herein took place prior to our decision in *Rose*, supra. Furthermore, no objection to this portion of the court's charge was made at trial nor was a point for charge contrary to the court's instruction requested.[9] Indeed, defense counsel stated he had no objection to the charge placing the burden of showing intoxication on the defense.

In *Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977) (Opinion in Support of Affirmance), Mr. Justice Pomeroy delineated the principles of law which mandate a rejection of Colbert's argument. *Ernst*, supra, explained that the principle of law announced in *Rose*, supra, was based on state evidentiary grounds and would not be applied to cases wherein the issue was not raised at trial. Additional discussion is not warranted.

The judgment of sentence should be affirmed.

POMEROY and NIX, JJ., join in this opinion.

8. Colbert's argument that the Commonwealth has a duty to present or concede before the jury any evidence which might be favorable to an accused is also without merit. Compare *United States v. Augurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

9. During oral argument in this appeal, counsel asserted a point for charge advancing the substance of our ruling in *Rose*, supra, was requested. Counsel has since advised this Court that assertion was in fact erroneous.

OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

When appellant raised the defense of intoxication, the court placed upon him the burden of proving that defense. Subsequent to appellant's trial, this Court held that the burden of proving that intoxication negated specific intent could not be shifted to the defendant. *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). Appellant on this direct appeal should be granted a new trial in light of *Rose*. As I stated in *Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977) (Opinion in Support of Reversal of Roberts, J., joined by O'Brien and Manderino, JJ.):

> "This Court has never required that an accused object at trial to an instruction fairly reciting the prevailing law in order to be accorded on direct appeal the benefit of a newly announced rule. In *Commonwealth v. Cheeks*, 429 Pa. 89, 95, 239 A.2d 793, 796 (1968), we stated that 'It would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived.'"
>
> Id. 476 Pa. at 116, 381 A.2d at 1252.

I would therefore reverse the judgment of sentence and award appellant a new trial.

O'BRIEN and MANDERINO, JJ., join in this opinion in support of reversal.