462 A.2d 657

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Bejtullah MEHMETI, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 21, 1983.

Decided July 8, 1983.

David Katz, Ellen Edge Katz, Stroudsburg, for appellant.

Thomas J. Nickels, Adam D. Bavolack, Asst. Dist. Attys., for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice.

This is a direct appeal from an order of sentence of the Court of Common Pleas of Schuylkill County, following the conviction of appellant for voluntary manslaughter, attempted voluntary manslaughter and aggravated assault.

Mr. Mehmeti was charged with killing one William Haslam, and injuring James Dietrich, in a shooting incident which occurred on December 25, 1979. He was originally tried on these charges on March 18, 1980. This trial ended on March 22, 1980, when a mistrial was declared due to a jury deadlock. The declaration of mistrial was objected to by appellant's counsel. Thereafter, new charges were filed, and appellant filed a "Motion for Dismissal of Charges", asserting double jeopardy as a bar to retrial. This motion was denied and on May 5, 1980, appellant's second trial was begun.

At this second trial the Commonwealth was permitted to introduce, over the objection of appellant's counsel, a head and shoulders photograph of the deceased victim in which he was clean shaven and dressed in a suit. The picture had been taken at the wedding of the victim's son, three years

prior to the shooting. The victim's son was permitted to identify the photo, and to tell when and where it had been taken. The trial judge admitted this photograph, and permitted it to go out with the jury during their deliberations.

On May 8, 1980 the jury returned a verdict of guilty on all charges. Post-trial motions were timely filed, raising the issue of double jeopardy, as well as the propriety of admitting the photograph of the deceased. The trial court denied these motions, and appellant was sentenced to a prison term of not less than two years, nor more than fifty-nine and a half months, plus a fine of $2,500.00 on the voluntary manslaughter charge. He was also given identical prison terms on the other two charges, with all sentences to run concurrently. This appeal followed.

As a rule double jeopardy attaches if a mistrial is declared without manifest necessity, or without the defendant's request or consent. However, a genuine inability of the jury to agree on a verdict can constitute manifest necessity, and the declaration of a mistrial in such circumstances will not bar re-prosecution. *Commonwealth v. Santiago,* 492 Pa. 297, 424 A.2d 870 (1981); *Commonwealth v. Sullivan,* 484 Pa. 130, 398 A.2d 978 (1979).

Appellant argues that the facts of this case do not indicate that the jury at the first trial was deadlocked. A review of the record indicates otherwise. After two days of deliberations the jury reported to the trial judge that they were hopelessly deadlocked. At that point the trial judge spoke with the jury and impressed upon them the importance of trying to reach a unanimous verdict. (N.T. Trial No. 1, Vol. IV at 29–30, March 21, 1980.) The jury agreed to deliberate further in an attempt to reach a verdict. Approximately three and one half hours later, the jury returned to the courtroom and the following exchange took place:

THE COURT: Members of the Jury, have you reached a verdict?

JURY FOREMAN: There is no verdict. No, your Honor. At this point we are hopelessly deadlocked.

THE COURT: Is that the opinion of the entire jury panel?

JURY FOREMAN: Everyone in the group was polled and the decision was that it could not be changed.

THE COURT: And no one would change their vote. Am I correct?

JUROR NO. 5: It wasn't unanimous about the deadlock.

JURY FOREMAN: No, it wasn't unanimous. I beg your pardon. After it was polled and I asked if anyone had any intention to change their vote, if anyone had intention of changing, and there was no one. This is what I am saying.

There was then a discussion amongst the trial judge and the attorneys, in which appellant's counsel objected to the grant of a mistrial. The trial judge then re-addressed the jury.

THE COURT (to the Jury): You said that your decision that you were hopelessly deadlocked was not unanimous. In other words, are there people on this jury who feel that you can reach a verdict?

JURY FOREMAN: I didn't say that in that respect, your Honor. I was referring to the poll on the deadlock. There was a poll and the majority voted for the deadlock. Then I said, we are going down there and he is going to ask us to come back or reconsider or accept it. Now, is there anyone here who is of the opinion that they could change their mind or opinion, or their vote, and it was unanimous that no one would change their vote. This is what I am saying.

. . . . .

THE COURT (to the Deputy Clerk of Courts): Hannah, will you poll the Jury and ask if they are willing to change their vote, without asking what their vote was, or what it is. Just ask if they are willing to change their vote which is now in a deadlock.

CLERK OF COURTS: Juror No. 1, Earl H. Matz, Sr., are you willing to change your vote?

JUROR NO. 1: No.

594

CLERK OF COURTS: Juror No. 2, Bernard J. Mazur, are you willing to change your vote?

JUROR NO. 2: No.

CLERK OF COURTS: Juror No. 3, Joseph Taris, are you willing to change your vote.

JUROR NO. 3: No.

CLERK OF COURTS: Juror No. 4, Sally Labenberg, are you willing to change your vote?

JUROR NO. 4: No.

CLERK OF COURTS: Juror No. 5, Cynthia Shatalski, are you willing to change your vote?

JUROR NO. 5: No.

CLERK OF COURTS: Juror No. 6, Richard G. Gilbert, are you willing to change your vote?

JUROR NO. 6: No.

CLERK OF COURTS: Juror No. 7, Geraldine Delkinko, are you willing to change your vote?

JUROR NO. 7: No.

CLERK OF COURTS: Juror No. 8, Wilhelmena Stauffer, are you willing to change your vote?

JUROR NO. 8: No.

CLERK OF COURTS: Juror No. 9, Mrs. Bernard Schlitzer, are you willing to change your vote?

JUROR NO. 9: No.

CLERK OF COURTS: Juror No. 10, Francis J. Gately, are you willing to change your vote?

JUROR NO. 10: No.

CLERK OF COURTS: Juror No. 11, are you willing to change your vote? That is, Juror No. 11, Irene M. Shadel, are you willing to change your vote?

JUROR NO. 11: No.

CLERK OF COURTS: Juror No. 12, Ronald W. Adroshick, are you willing to change your vote?

JUROR NO. 12: No.

Thereafter the judge stated:

THE COURT: It is apparent to the Court that the Jury is hopelessly deadlocked. Therefore, we will declare a

mistrial and discharge you from further duty in this case or from further duty in this term. However, in spite of the result, we want to thank you for your conscientious effort in trying to reach a decision. We know you conscientiously tried to reach what you thought was the proper decision. We are sorry and disappointed that no verdict was reached but that just happened. Thank you very much for your time and for your efforts. We appreciated it.

(N.T. Trial No. 1, Vol. IV at 32–34, March 22, 1980.)

■■■ Appellant's double jeopardy argument is based solely on the confusion engendered by the comment of Juror No. 5. However, the decision as to whether or not a deadlock existed was for the judge to determine. To this end the opinion of one juror was only one factor to be considered. In light of the fixed opinions of each member of the jury, there was no error in the trial judge concluding that there existed manifest necessity for the grant of a mistrial. *See, Commonwealth v. Monte,* 459 Pa. 495, 329 A.2d 836 (1974).

Appellant's second issue concerns the admissibility of the photograph of the deceased victim. In *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1981), we held that photographs of a victim and/or his family, which are irrelevant to a determination of guilt or innocence, are inadmissible. *Cf. Commonwealth v. Green,* 488 Pa. 611, 615 n. 2, 413 A.2d 651, 654 n. 2 (1980) (photos held admissible to show that aged victim could not have behaved in manner described by defendant). Since the admitted purpose of the Commonwealth in offering the photograph was merely "to show what kind of man he (the victim) was," (N.T. Trial No. 2, Vol. III, at 395–396, May, 1980) there was no relevancy to the question of appellant's guilt or innocence.

■■■ Therefore, we hold that the trial court erred when it admitted the photograph into evidence. Our inquiry does not, however, end with this conclusion. The question remains as to whether the error in admitting the photograph was "harmless beyond a reasonable doubt." *Story, supra,* 476 Pa. at 405–406, 383 A.2d at 164.

The standards for determining whether a trial error is harmless beyond a reasonable doubt were well stated by this Court in *Story.*

This Court has stated than an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *Commonwealth v. Davis,* 452 Pa. 171, 178–79, 305 A.2d 715, 719 (1973); accord, *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If " 'honest, fair minded jurors might very well have brought in not guilty verdicts,' " an error cannot be harmless on the basis of overwhelming evidence. *Commonwealth v. Davis,* 452 Pa. at 181, 305 A.2d at 721 quoting *Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967). Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

. . . .

Our cases support the proposition that in deciding whether an error is harmless because there is properly admitted overwhelming evidence of guilt the untainted evidence relied upon must be uncontradicted. (footnotes omitted.)

*Story, supra,* 476 Pa. at 412–413, 383 A.2d at 166. However, even under these stringent standards, we find that the error in admitting this photograph was harmless.

In *Story,* the Commonwealth offered two family photographs of the victim, his wife and their handicapped daughter. The photographs were casual shots, taken while the family was on vacation. The admission of those photographs was accompanied by the victim's widow's testimony

regarding how her life had been altered by the victim's death. In this case the picture, being only of the head and shoulders, did not possess the same emotive qualities as those in *Story, supra,* and the testimony accompanying its admission was limited to an identification of the photograph, and a description of the time and place when it was taken. (N.T. Trial No. 2, Vol. I at 150, May 18, 1980.) Furthermore, unlike in *Story,* there was no question regarding the identity of the victim's assailant. Finally, the jury in this case, though instructed on first degree and third degree murder, convicted appellant of voluntary manslaughter. *Cf. Story, supra.*

 In order to procure a verdict of voluntary manslaughter the Commonwealth has the burden of proving beyond a reasonable doubt that a homicide was not a justifiable act of self-defense.[1] *Commonwealth v. White,* 492 Pa. 489, 491, 424 A.2d 1296 (1981); *Commonwealth v. Walley,* 466 Pa. 363, 353 A.2d 396 (1976). A killing which occurs because of a mistaken belief that facts of justification exist will constitute voluntary manslaughter. *See* 18 Pa.C.S.A. § 2503(b); *Commonwealth v. Cain,* 484 Pa. 240, 398 A.2d 1359 (1979); *Commonwealth v. Nau,* 473 Pa. 1, 373 A.2d 449 (1977).

The Commonwealth's evidence clearly established that at the time of his death the victim was not armed. On this point appellant's own testimony was that he fired at Dietrich and Haslam without ever having been confronted with a gun,[2] and that the physical contact which precipitated the

1. For a person to have justifiably used deadly force in defense of himself three factors must be found to have existed: first, the actor must have reasonably believed himself to be in imminent danger of death or serious bodily harm, and that it was necessary to use deadly force against the victim to prevent such harm; second, the actor must have been free from fault in provoking or continuing the difficulty which resulted in the slaying; and, third, the actor must have violated no duty to retreat. *See,* 18 Pa.C.S.A. § 505; *Commonwealth v. Brown,* 491 Pa. 507, 512, 421 A.2d 660, 662 (1980).

2. During cross-examination by the Commonwealth's attorney, appellant testified as follows:

shooting consisted only of a single blow to the shoulder.[3]

The Commonwealth's evidence further established that Mr. Haslam was killed by a gun shot wound to the head (N.T. Trial No. 2, Vol. III at 241–42, May 7, 1980); and that at least two bullets were fired into Mr. Dietrich, at least one of which entered his "left flank" and·came out "at the base of his neck just above the breastbone," indicating that Mr. Dietrich was not facing appellant at the time he was shot. (*See* N.T. Trial No. 2, Vol. III at 254, May 7, 1980.)

Given the above cited evidence, and the relative innocuous nature of the evidence in question, we are satisfied that any error in admitting the photograph was harmless beyond a reasonable doubt.

We therefore affirm the judgment of sentence imposed by the trial court.

NIX, J., files a concurring opinion in which LARSEN, J., joins.

HUTCHINSON, J., did not participate in the consideration or the decision of this matter.

> Q. Certainly, if Mr. Haslam was going to rob you, you knew that he couldn't get away with it.
> A. I ... I don't know what's going on myself. I couldn't ...
> Q. You could report it to the police, and certainly Mr. Haslam could be arrested for robbing you, couldn't he?
> A. Well, if they say, just get the money, but when they says, ... He says, you going ... You know what kind of guns, I have, you know what I carry, you going to be dead, then I don't know what's going on myself.
> Q. But you didn't see any gun?
> A. No.

**3.** Upon further cross-examination, he testified:

> Q. And as I ... I think you say, perhaps Dietrich had the billy club, but he at most gave you a push.
> A. No, it was like this (indicating), it was like this (indicating).
> Q. Pushed you here with it (indicating)?
> A. Right here (indicating).
> Q. Now, you didn't say anything about the billy club to the state police when they arrested you, and you gave a statement to them?
> A. No, sir.
> Q. You said the boy slapped you, didn't you?
> A. Like I told them in the beginning, you know, I was probably confused, you know. Well, he hit me on this side (indicating).

NIX, Justice, concurring.

I agree with the majority's conclusion that the photograph of the victim was improperly admitted into evidence. Nevertheless, the majority fails to appreciate that the initial error was significantly exacerbated by the court's direction allowing the picture to be taken out with the jury during their deliberations. The majority attempts to suggest that this photograph did not possess the same emotive qualities as those in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1981). However, this argument rings hollow in view of the Commonwealth's concession that the only purpose for offering the photograph was "to show what kind of man he (the victim) was." There are many instances where the defense of self defense is being raised and a picture of this nature, depicting the victim in the most favorable circumstances, could be highly prejudicial. I concur in the instant result only because of the overwhelming weight of the evidence supporting the verdict reached by the jury.

LARSEN, J., joins in this concurring opinion.